CASE 106.—ACTION BY CARL WILSON AGAINST THE LOUIS-
        VILLE & NASHVILLE RAILROAD CO., FOR DAM-
        AGES FOR PERSONAL INJURIES.—March 6.

## Louisville & N. R. R. Co. v. Wilson

Appeal from Jefferson Circuit Court, Common Pleas Branch (Second Division).

THOMAS R. GORDON, Judge.

Judgment for plaintiff. Defendant appeals. Affirmed.

1. Railroads—Accidents at Crossings—Gates.—Where a railway maintains a watchman and gates at a crossing and fails to keep the same down or give proper warning when trains are passing, it is liable to a person injured thereby who is not guilty of contributory negligence.

2. Same—Pleading and Proof—Variance.—A party cannot recover for injuries alleged to have been received at a crossing if it is shown that he was not injured while passing over the crossing, but while alighting from a freight train.

3. Same—Contributory Negligence.—A party cannot recover for injuries received at a crossing if guilty of contributory negligence.

4. Same—Failure to Look and Listen—Gates—Watchman.—The failure to look and listen for a train at a street crossing is

Louisville & N. R. R. Co. v. Wilson.

not per se negligence, where the railroad company keeps a watchman and gates at the crossing and the gates are up.

HELM & HELM for appellant.

H. L. STONE, B. D. WARFIELD of counsel.

On this state of the record, we submit:

1. That under the circumstances of this case, to-wit, as to a wide-awake pedestrian walking practically towards the train which struck him, that the lowering of the gates was not the only means of giving a reasonable warning of the train's approach. (Paducah & Memphis R. Co. v. Hoehl, 12 Bush, 45; C. & O. Ry. Co. v. Gunther, 21 Ky. Law Rep., 1803; I. C. R. R. Co. v. Dick, 91 Ky., 41; and cases cited below.)

2. That when the plaintiff admits he walked from 65 to 70 feet without looking or listening for a train, he was guilty of contributory negligence, and the jury had no right to find as an excuse for plaintiff that a train going south on the transfer track obstructed his view when the admitted physical facts demonstrated that this was utterly impossible, and therefore could not be true. (L. H. & St. L. Ry. Co. v. Jolly, 28 Ky. Law Rep., 992; 4 Elliott on Railroads, sec. 1703; Lake Erie, &c., R. Co. v. Stick, 143 Ind., 449; 41 N. E., 365; Herriet's estate, 145 N. Y., 540, 40 N. E., 246; Jones v. Northwestern Mutual, 90 Wisc., 332, 63 N. W., 276; Butero v. Travelers Insurance Co., 91 Wis., 536, 71 N. W., 811.)

3. That the instruction as to contributory negligence peremptorily instructed the jury to exclude practically all the evidence of plaintiff's contributory negligence on his theory as to his movements just prior to the accident. (L. & N. v. Servant, 19 Ky. Law Rep., 1578; Rupert v. C. & O. Ry. Co., 88 Ky., 280-5; L. & N. R. R. Co. v. Cumming's Adm'r, 111 Ky., 333-40; Dick v. L. & N. R. R. Co., 23 Ky. Law Rep., 1069; L. & N. R. R. Co. v. Sights, 28 Ky, Law Rep., 186; L. & N. R. R. Co. v. Cleaver, 28 Ky. Law Rep., 497; Calawalder v. L. N. A. & C. R. R. Co., (Ind.) 27 N. E., 162; Merrigan v. B. & O. R. Co., (Mass.) 29 N. E., 149; Smith v. Wabash, 40 N. E., 270; Romer v. Boston & Maine R. Co., (Me.) 23 Atl., 44; Greenwood v. P. W. & B. R. Co., (Penn.) 3 L. R. A., 44.)

JACOB SOLLINGER and D. W. BAIRD for appellee.

POINTS AND AUTHORITIES.

We submit:

1. That the facts in this case do not show any contributory

Louisville & N. R. R. Co. v. Wilson.

negligence on the part of appellee.

(a) Because appellee waited at the crossing until the gates were raised.

(b) The failure to look and listen for a train before attempting to cross the railroad track under the circumstances of this case does not amount to contributory negligence, as a matter of law. (Lou., &c., R. R. Co. v. Goets's Adm'r, 79 Ky., 442; Ramsey v. Lou., &c., R. R. Co., 12 Ky. Law Rep., 560; Ky. Cent. Ry. Co. v. Smith, &c., 93 Ky., 449; L. & N. R. R. Co. v. Price's Adm'r, 76 S. W., 836; Dick v. L. & N. R. R. Co., 23 Ky. Law Rep., 1068; Stegner v. Chicago, &c., R. R., (Minn.) 102 N. W., 205.)

(c) The physical facts in the evidence in this case show that it was not only possible but highly probable that a freight train proceeded south on the transfer track immediately preceding the raising of the gates and the crossing of the tracks by appellee, and where the evidence is conflicting the verdict of the jury will not be disturbed unless flagrantly against the evidence. (L. & N. R. R. Co. v. Price's Adm'r, 76 S. W., 836; L. & N. R. R. Co. v. Tucker's Adm'r, 23 Ky Law Rep., 1929; Robards v. Jenkins, et al., 76 S. W., 10, 25 Ky. Law Rep., 449; Castle v. Mercer National Bank, 22 Ky. Law Rep., 1009; Glascock v. Littell, 22 Ky. Law Rep., 29; L. & N. R. R. Co. v. Gray's Adm'r, 20 Ky. Law Rep., 79.)

2. The raising of the gates maintained by appellant at an important crossing in a densely populated city amounts to an invitation and assurance to the public that the crossing may be made in safety. (Stegner v. Chicago, &c., R. R. (Minn.) 102 N. W., 205; Chicago, &c., v. Schmintz, 211 Ill., 446, 71 N. E., 1050; Northern Cent. R. R. v. State (Md.) 60 Atl., 19; B. & O. R. R. v. Stump, 97 Md., 94 (54 and 978); N. E. Ry. v. Wanless, 7 Eng. & Irish App., 12; Stapley v. London & Brighton Ry. Co., L. R., 1, Q. B., 277; Grand Trunk Ry. v. Ires, 144 U. S., 408, 12 Sup. Ct., 679, 36 L. Ed., 485; Dolan v. Del. & Hudson Canal Co., 71 N. Y., 288; Glushing v. Sharp, 96 N. Y., 676; Palmer v. N. Y. Cent. R. R., 112 N. Y., 288; Chicago & Rock Island R. R. v. Clough, 134 Ill., 586, 25 N. E., 664, 29 N. E., 1184; Rohde v. Chicago & N. W. R. R. Co., 86 Wis., 312, 56 N. W., 872; Evans v. Lake Shore & Mich. Sou. R. R., 88 Mich., 442, 50 N. W., 286, 41 L. R. A., 223; Wilson v. N. Y. & N. H. R. R. (R. I.) 29 A., 258; Sager v. Atkinson, (Kan.) 79, p. 132; Galveston, &c., R. R. v. Foy (Tex. Civ. App.) 84 S. W., 664; Chicago, &c., R. R. v. Zapp, 110 Ill. App., 553; Chicago, &c., R. R. v. McAuraw, 114 Ill. App., 501; Lake Erie, &c., v. Fike (Ind. App.) 320; Lou. &c., R. R. Co. v. Schick, 94 Ky., 194; Ky. Cent. Ry. Co. v. Smith, &c., 93 Ky., 449; Sights v. L. & N. R. R. Co., 78 S. W., 172; Richmond v. Chi. & W. M. R. Co., 87 Mich., 374, 374, 49 N. W., 621; C. C. C. & I. R. Co. v.

Louisville & N. R. R. Co. v. Wilson.

Schneider, 45 Ohio St., 687, 17 N. E., 321; Woehrle v Minnesota Transfer Co. (Minn.) 84 N. W., 791, 52 L. R. A., 348; L. & N. R. R. Co. v. Sights, 89 S. W., 132; Dick v. L. & N. R. R. Co., 23 Ky. Law Rep., 1068.)

3. Appellant cannot complain of the instructions of the trial court, for by them it was only required to use ordinary care, whereas, the evidence in this case shows this crossing to be an important crossing in a large city where three or more railroad tracks cross the juncture of two streets and are constantly used and "extraordinary care must be shown on the part of the railroad company before it can be exempted from liability for injury of those who have the same right to use the streets that the company has." (Ky. Cent| Ry. Co. v. Smith, 93 Ky., 449; Lou. &c., R. R. Co. v. Schick, 94 Ky., 191; Sights v. L. & N. R. R. Co., 78 S. W., 172.)

We firmly believe that there has been no error by the lower court to the substantial rights of the appellant and therefore ask your honors to affirm the judgment of the lower court.

OPINION OF THE COURT BY JUDGE HOBSON—Affirming.

The tracks of the Louisville & Nashville Railroad Company leading from the south into Louisville cross diagonally Seventh street at and a little north of its intersection with Magnolia avenue. There are gates maintained by the company on both sides of the crossing. Seventh street at this point is a much traveled city highway; perhaps the most traveled highway leading into the city from the country. On the 11th of November, 1905, about 6 p. m. Carl Wilson, then 18 years of age, who lived south of the crossing, went up Seventh street, past the crossing, about 100 yards, to a boot-black stand, where he had his shoes shined, intending to go to a party. He then returned along Seventh street until he reached the gate at the crossing, where he found a freight train passing and the gates down. There are three tracks at this point. The freight train was passing on the east track. As soon as the freight passed the gates were raised, and

he started across, passing close to the rear end of the freight which was going south. Just as he reached the next track he was struck by a north-bound passenger train on that track moving rapidly. He was not aware of the coming of the passenger train, and apparently did not know what had struck him. His arm was so broken by the collision as to require amputation near the shoulder, and he sustained a serious injury to his head as well as bruises on his body. He brought this suit to recover damages. The case was tried in the circuit court, resulting in a verdict and judgment for him for $2,250, and the railroad company appeals.

The above is a statement of the facts as shown by the proof for the plaintiff; three or four persons in the vicinity testifying that the accident occurred as related above. On the other hand, the proof for the railroad company is that the gates were not raised, that there was no freight train going south on the east track, and that Wilson swung off of a freight train passing along the west track and was struck by the passenger train on the other track just after he reached the ground.

The court, among other things, instructed the jury as follows:

"(1) The court instructs the jury that it was the duty of the defendant, Louisville & Nashville Railroad Company, at the intersection of its tracks with Seventh and Magnolia streets to lower the gates which it maintained at said intersection on the approach of a train, so as to give to those attempting to use the crossing a reasonable opportunity to avoid injury from the train, and, if the jury believe from the evidence that at the time and place complained of by the plaintiff, Carl Wilson, the defendant negligently failed to discharge this duty, and that the plaintiff

was injured thereby while attempting to cross said intersection, and that the plaintiff was not at said time and place himself guilty of contributory negligence, but for which he would not have been injured, then the law is for the plaintiff, and the jury shall so find.''

"(2) If the jury believe from the evidence that the defendant discharged the duty incumbent upon it as laid down in instruction 1, or if they believe from the evidence that the plaintiff was not injured while attempting to cross over the intersection, or if they believe from the evidence that the plaintiff was himself guilty of contributory negligence, but for which he would not have been injured, then the law is for the defendant, and the jury shall so find.''

"(4) By the term 'contributory negligence,' as used in these instructions, is meant a failure on the part of the plaintiff to use ordinary care for his own protection and safety, under the facts and circumstances in evidence preceding and attending his injury; and in this connection the court instructs the jury that, if they believe from the evidence that the gates were raised or were up at the time the plaintiff entered upon the intersection for the purpose of crossing it, then this circumstance was an invitation on the part of the defendant to the plantiff and the public to cross, and an assurance that the track could be crossed in safety, and the plaintiff cannot be found guilty of contributory negligence in attempting to make the said crossing unless the jury believe from the evidence the he failed to use ordinary care for his own safety and protection under these circumstances; but, if the jury believe that the gates were raised or were up at the said time and the plaintiff did fail under the circumstances to use ordinary care, or if the jury believe that the plaintiff entered upon said crossing while the gates were down or were being lowered, then the law

is for the defendant and the jury should so find, notwithstanding the jury may believe that the defendant was also guilty of negligence at the same time and place.

"(5) If you believe from the evidence that the plaintiff, Carl Wilson, jumped upon or boarded the freight train of the defendant without the defendant's consent, and while alighting from such train the plaintiff, Carl Wilson, was injured, then the law is for the defendant, and you shall so find."

As the proof was clear that Wilson, if he jumped upon or boarded the freight train, did so without the defendant's consent, the fifth instruction was in effect a peremptory instruction to the jury to find for the defendant if he received his injuries while alighting from that train. The same idea is conveyed in so much of instruction 2 as told the jury they should find for the defendant if the plaintiff was not injured while attempting to cross over the intersection; so that the verdict of the jury is a finding that he was injured while crossing over the intersection in the manner related by him.

The finding for the plaintiff under instructions 1 and 2 is in substance a finding that the gates at the crossing had been raised as an invitation to persons on the street to pass over the intersection, and that he was injured while attempting to do so and exercising ordinary care for his own safety under the circumstances. It is complained that the court told the jury in effect that Wilson had a right to rely upon the raising of the gates as an invitation on the part of the defendant to cross. Wilson testified that, when the gates were raised, he did not stop, look, or listen for the train, but, assuming that it was safe, went upon the crossing, and it is insisted that the court in lieu of instruction No. 1 should have given the jury this in-

struction: "It was the duty of defendant to exercise care to notify persons using said street of the approach of a train or trains to said crossing by lowering the railroad gates, or by other notice or signal reasonably calculated to warn persons using said street or avenue of the approach of a train or trains to said intersection. The plaintiff, Carl Wilson, had the right to cross the railroad tracks on Seventh street or Magnolia avenue, but it was his, the said Carl Wilson's duty to exercise care and prudence to discover for himself the approach of trains, and care and caution to keep out of danger." The passenger train was ringing its bell as it approached the crossing, but the freight train perhaps prevented Wilson from hearing the bell or seeing the passenger train, and so the question is presented whether the raising of the gates at the crossing of a city highway may be relied on by the traveler as an invitation to pass over the crossing.

In Dick v. L. & N. R. R. Co., 64 S. W. 725, 23 Ky. Law Rep. 1068, where the plaintiff had been injured on a street crossing similar to this when the gates were up, the circuit court had given a peremptory instruction to find for the defendant, but this was reversed on appeal. The court said: "The court cannot say as matter of law that because she failed to look and listen for the approaching train before she went on to the track she was guilty of contributory negligence, in view of the fact that appellee was required and did keep a watchman and gates across the street at that crossing, and that it was his duty to let down the gates on the approach of trains. If the gates were up, as appellant's proof tends to show, it might reasonably be concluded by the traveler that there was no danger in crossing. As to whether there was negligence in failing to look for a train when the

gates are up is a question that cannot be said as a matter of law to be entirely settled in the affirmative. Different persons, judging from the conduct of the ordinarily prudent person, might differ as to whether this was negligence. In our opinion the peremptory instruction was error.'' In Sights v. L. & N. R. R. Co., 117 Ky. 436, 25 Ky. Law Rep., 1548, 78 S. W. 172, the court quoted with approval the following: ''And, when gates or a flagman have been maintained by railroad companies at the crossing of streets in cities and towns, the public have a right, when the gates are open, or the flagman not in his accustomed place of duty, to presume, in the absence of knowledge to the contrary, that the gateman or flagman is properly discharging his duties; and it is not negligence on their part to act on the presumption that they will not be exposed to a danger which could only arise from the disregard of his duties; and it is negligence for a gatekeeper or flagman to leave his post, knowing that an engine is approaching a crossing without giving some signal of danger.'' On the second appeal of that case (see L. & N. R. R. Co. v. Sights, 28 Ky. Law Rep. 186, 89 S. W. 132) the court approved an instruction substantially in the language above quoted. In this case the gatekeeper was not absent. He was at his post, and raised the gate. The obvious purpose in raising the gate was to take the gate out of the way of the people so that they could pass over. The raising of the gate was necessarily an invitation to the public to use the crossing, and, as has been well said, it can make no difference that a gatekeeper expresses that the road is safe by opening the gate or by word or gesture. The railroad company is required to maintain the gates for the better security of the public, and they would be not only a mockery, but actually misleading

if the raising of the gates when they are down is not an invitation for the public to pass.   See Northern Central Railroad Co. v. State (Md.), 60 Atl. 19; Stegner v. Chicago, etc., R. R. Co. (Minn.), 102 N. W. 205, and cases cited.

The court did not tell the jury that the raising of the gates would relieve Wilson of the obligation to use ordinary care for his own safety.   He only told them that the raising of the gates was an invitation on the part of the defendant to the plaintiff to cross, and he still left it for them to determine whether, in view of this invitation, Wilson exercised ordinary care for his own safety under the circumstances.   The instructions of the court conform to the rule heretofore laid down by this court and fairly submitted the case to the jury.

Judgment affirmed.