CASE 92.—ACTION BY PHILLIP ROTH AGAINST THE LOUIS-
VILLE & NASHVILLE RAILROAD COMPANY AND
ANOTHER FOR DAMAGES FOR PERSONAL IN-
JURIES.—December 3.

# Louisville & Nashville R. R. Co. v. Roth

Appeal from Kenton Circuit Court.

W. McD. Shaw, Circuit Judge.

Judgment for plaintiff, defendant appeals — Af-
firmed.

1. Damages—Personal Injury—Amount.—Where plaintiff was
knocked senseless, his body bruised and cut, his ankle badly
injured, and as a result he was confined to his bed for sev-
eral weeks, the general condition of his health was greatly
impaired, and his capacity to labor largely reduced, a verdict
of $3,000 as compensation was not excessive.

2. Railroads—Duty to Protect Crossing.—Not only the company
owning a railroad, but a company running over it, is responsi-
ble to a third person for failure to have a crossing in a busy
part of a city protected, notwithstanding a contract between
the two placing the duty on the owner.

3. Crossing Accident—Gross Negligence.—There is gross negli-
gence authorizing punitive damages, where, through reckless
inattention to duty of one stationed at a railroad crossing to
operate the gates, they are left up when a train is approach-
ing, and a team is allowed to drive in front of it; a view of
it from the team being obstructed by cars on a siding.

4. Punitive Damages.—Punitive damages, allowable in case of
gross negligence, may be allowed for omission, as well as
commission

5. Corporations—Torts—Agent's Acts—Punitive Damages.—Puni-
tive damages may be allowed against corporations for acts
of their agents.

6. Punitive Damages—Amount.—The amount of punitive dam-
ages is in the sound discretion of the jury, with the limita-

tion that they must not be so excessive as to indicate influence by passion or prejudice, and must have some reasonable relation to the injury and the cause of it; so that, the actual damages found being $3,000, and the gross negligence being in leaving up the gates at a railroad crossing, allowing a team to get in front of a train, an allowance of $2,000 punitive damages is not excessive.

7. Trial—Joint Tort-Feasors—Separate Verdicts.—Where joint tort-feasors are sued in the same action, separate verdicts for different amounts may be awarded against them, and punitive damages allowed against one, and not against the other.

8. Railroads—Crossing    Accident—Contributory    Negligence— "Ordinary Care."—One driving onto a railroad at a crossing, where the gates have negligently been left up though a train is approaching, has no right to rely exclusively on the operatives of the gates or of the train in looking out for his safety and giving him notice, but he must use "ordinary care," such care as an ordinarily prudent person would use under the same or similar circumstances, to discover the approach of the train and for his own safety; and, if he does so rely on the others, without using such care, he is guilty of contributory negligence.

9. · Negligence—Definition.—Negligence is the failure to exercise ordinary care.

10. "Gross Negligence."—"Gross Negligence" is the failure to exercise slight care.

GALVIN & GALVIN for appellants.

S. D. ROUSE and BENJAMIN D. WARFIELD of counsel.

There were a great many errors complained of in our motion for a new trial in the court below, but in this brief we shall limit our argument to the following questions only:

1. That the verdict of the jury is grossly and outrageously excessive, and was given under the influence of passion and prejudice.

2. Error of the court in instructions given and refused.

3. The verdict is not in accordance with the instructions of the court.

4. Misconduct of the attorney for plaintiff.

5. Punitive damages should not have been allowed.

Louisville & Nashville R. R. Co. v. Roth.

## AUTHORITIES CITED.

Standard Oil Co. y. Tierney, 96 Ky. 89; 'Southern Ry. Co. v. Minogue, 90 Ky. 369; L. & N. R. R. Co. v. Survant, 96 Ky. 197 at 208; S. C. & C. St. Ry. Co. v. Ware, 84 Ky. 267; L. & N. v. Law, 14 Ky. Law Rep. 850; L. & N. v. Foley, 94 Ky. 220 at 230; L. & N. v. Fox, 15 Ky. Law Rep. 199; L. & N. v. Sickings, 5 Bush 1; L. & N. v. Fox, 11 Bush 495; Louisville Water Co. v. Upton, 18 Ky. Law Rep. 326; L. & N. v. Mattingly, 18 Ky. Law Rep. 823; L. & N. v. Banks, 17 Ky. Law Rep. 1065; L. & N. v. Helm, 89 S. W. 709; Louisville S. Ry. Co. v. Degore, 84 S. W. 326; B. & O. S. W. v. Hausman, 21 Ky. Law Rep. 1264; L. & N. v. Chism, 20 Ky. Law Rep. 584; Ky. Hotel Co. v. Camp, 17 Ky. Law Rep. 297; L. & N. v. Brannon, 13 Ky. Law Rep. 534; L. & N. v. Constantine, 14 Ky. Law Rep. 432; L. & N. v. Abel, 14 Ky. Law Rep. 239; Bowling Green Stone Co. v. Capshaw, 23 Ky. Law Rep. 945; C., N. O. & T. P. Ry. v. Pemberton, 9 Ky. Law Rep. 859; L., H. & St. L. Ry. v. Kassee, 31 Ky. Law Rep. 617; Hurst v. Williams, 31 Ky. Law Rep. 659.

ROBERT C. SIMMONS for appellee

## POINTS AND AUTHORITIES.

1. Place where accident occurred.
2. Relation between appellants.
3. How accident happened.
4. Gross negligence of bridge company.
5. Extent of appellees injury.
6. The verdict was not excessive.
7. Superlatively gross negligence of appellant bridge company justified the finding of punitive damages.
8. Appellant bridge company liable for. acts of its watchman.
9. The jury was properly instructed on the question of contributory negligence.
10. The verdict is in accord with the instructions.
11. Alleged misconduct of counsel.

## AUTHORITIES CITED.

Standard Oil Co. v. Tierney, 93 Ky. 367, 379; Sedgwick, Measure of Damages, sec. 1320; L. & N. R. R. Co. v. Mitchell, 87 Ky. 327; So. Ry. Co. v. Minogue, 90 Ky. 369; So. Cov. & Cin. St. Ry. Co. v. Pelzer, 19 Ky. Law Rep. 91; L. & N. R. R. Co. v. Carrothers, 23 Ky. Law Rep. 1673; L. & N. R. R. Co. v. Shepard, 24 Ky. Law

Rep. 839; C. & O. R. R. Co. v. Dodge, 23 Ky. Law Rep. 1959; Louisville Ry. Co. v. Will's Admr., 23 Ky Law Rep. 1961; C. N. R. Co. v. Hallan, 12 Ky. Law Rep. 506; L. & N. R. R. Co v. Page, 12 Ky. Law Rep. 988; Lou. Bagging Co. v. Dolan, 13 Ky. Law Rep 493; Lexington Ry. Co. v. Fain, 28 Ky. Law Rep. 743; L., H. & St. L. R. R. C. v. I. C. R. R. Co., 29 Ky. Law Rep. 265; Ky Stat., sec. 12; Cent. Pass. Ry. Co. v. Kuhn, 86 Ky., 593; I. C. R R. Co. v. Cane's Admr., 28 Ky. Law Rep. 1022.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellee was injured in a collision between one of the trains of the Louisville & Nashville Railroad Company and a wagon that he was driving across the railroad tracks where they intersect Twelfth street in the city of Covington. There is little, if any, dispute about the facts as they relate to the cause of the collision. The Covington & Cincinnati Railroad & Transfer & Bridge Company operated a railway extending into the city of Covington upon Twelfth street, over which the trains of the Louisville & Nashville Railroad Company were run. Twelfth street, at the point where it crosses the railroad track, is in a populous part of the city, and many vehicles using this street cross the railroad tracks at this intersection. For several years prior to the accident the bridge company maintained at this crossing safety gates in charge of a watchman, who was in the employ of the bridge company. The accident occurred about 8 o'clock in the morning, as appellee was driving west on Twelfth street and attempting to cross the railroad tracks. As he approached the crossing, he was driving in a slow trot. The gates were up and open; and, supposing that he could safely cross the tracks, he made the attempt. Just as he reached the northbound main track, a

Louisville & Nashville passenger train appeared, running at a speed variously estimated from 15 to 30 miles an hour. The pilot of the engine struck the front part of the vehicle, separating the horses from it, throwing the horses on one side of the train, and leaving the wagon in which Roth was riding upon the other. The wagon with Roth in it, after being separated from the team, was struck by the baggage car, and by one or two other cars, causing it to be rolled over several times. Appellee was knocked senseless, his body was bruised and cut, his ankle badly injured, and as a result of the accident, he was confined to his bed for several weeks. At the time of the trial, which took place several months afterwards, the general condition of his health was greatly impaired, and his capacity to labor greatly reduced. The watchman, who should have closed the gates before the train reached the crossing, thereby warning travelers of its approach and preventing them from getting on the tracks, in place of discharging his duty, was engaged in talking to a colored woman. There is sharp conflict in the evidence as to whether the engine bell was ringing. A number of witnesses testified that the train gave no warning of its approach while others said that the engine bell was ringing. Appellee testified that he was keeping a lookout for approaching trains, but was prevented from seeing the one that struck him by a string of freight cars, on a side track near the crossing, that obstructed his view of the train. These cars also prevented the engineer from discovering appellee until his team came on the track. The jury assessed the damages against the Louisville & Nashville Railroad Company at $1,000, and awarded $2,000 as compensation against the bridge company,

and $2,000 as exemplary damages against the same
company. The judgment entered upon this verdict
we are asked to reverse because, first, the verdict is
excessive, and punitive damages should not have been
allowed; second, the court erred in giving and refus-
ing instructions; third, misconduct upon the part of
the attorney for the plaintiff. We have read carefully
the parts of the argument of counsel for plaintiff
objected to, and do not find that counsel exceeded
the bounds of legitimate discussion in making the
statements complained of.

In regard to the size of the verdict, if appellee had
not been entitled to punitive damages, the argument
that the verdict is excessive would be entitled to
more weight. He was awarded as compensation
$3,000, and under the facts we are not prepared to
say that this sum was too large. At the time of
his injury appellee was a man about 29 years of age,
strong, active, and healthy. A number of witnesses
testified that after the injury his health was impaired,
and his capacity to labor lessened. The trial judge,
after hearing the evidence, believed that it warranted
him in submitting the question of whether or not
appellee was permanently injured to the jury as an
element of the damage that he was entitled to recover
if successful. That the submission upon this point
was authorized by the evidence seems to have been
conceded by counsel representing both of the appel-
lant companies, as we find that both of the appellant
companies, included in instructions offered by them as
an element of damage to which plaintiff was entitled,
the permanent reduction of his power to earn money.
But, aside from this view of appellee's injuries,
accepted as correct by counsel and the lower court,
we are satisfied from an examination of the evidence

that it authorized the court to submit this question to the jury. So that, in addition to compensation for the pain and suffering that appellee underwent as the immediate consequence of the injuries, he was entitled to compensation for any permanent injury that was the direct result of the accident, and the amount found as compensation by the jury was not excessive. It is however vigorously insisted that the court erred in giving to the jury an instruction that permitted them to award exemplary damages, and that the verdict of the jury in assessing these damages at $2,000, was grossly excessive. Under the admitted facts of this case there can be no doubt that both of the companies were guilty of gross neglect in failing to have the crossing protected when the train that struck appellee passed. The contract between the two companies did not relieve either of them of this responsibility. Although as between them it was the duty of the bridge company to perform this service, yet as to the public it was the duty of both, and neither could escape liability for this negligence upon the ground that, by a contract between them, it was the duty of the other to maintain these gates. The duty of protecting a crossing like this cannot be delegated to one of the companies using the track, or to the owner of the track, so as to absolve the company whose trains commit an injury, or the owner of the track, from liability to the person injured. Schulte v. L. & N. R. Co., 128 Ky. 627, 108 S. W. 941, 33 Ky. Law Rep. 31; L. H. & St. L. R. Co. v. Illinois Central R. Co., 93 S. W. 41; 29 Ky. Law Rep. 265; L. H. & St. L. R. Co. v. Kessee, 103 S. W. 261, 31 Ky. Law Rep. 617.

The failure to protect this crossing was not due to accident, or other cause that could not well be antici-

pated or guarded against. It was the result of reck-
less inattention to duty on the part of the employe
who was stationed there to warn travelers of the
approach of trains by closing the gates. The cross-
ing at the time appellee was injured was exception-
ally dangerous on account of the cars on the siding
that obstructed his view of the approaching train,
and at the same time prevented the engineer from
seeing his peril until it was too late to avoid his in·
jury. But, if there had been no cars standing on
the track, the fact that the gates were open was itself
an invitation that the passage was safe. The open
gates, in effect, said to the traveler: "You may safely
cross the track, as no train is approaching that will
injure you." The open gate was the same as if the
employe stationed there had called or motioned to
appellee to cross, and to leave the gates open under
circumstances like those proven in this case was a
reckless disregard of human life. Louisville Bridge
Company v. Moroney, 106 S. W. 870, 32 Ky. Law
Rep. 705; Sight v. L. & N. R. Co., 117 Ky. 436. 25 Ky.
Law Rep. 1548, 78 S. W. 172; L. & N. R. Co. v. Wilson,
124 Ky. 836, 100 S. W. 302; Cross v. I. C. R. Co., 110
S. W. 290, 33 Ky. Law Rep. 432. As the companies
were guilty of gross neglect, the appellee was entitled
to be allowed, in the discretion of the jury, punitive or
exemplary damages. That such damages may be
awarded where the negligence is gross is no longer
an open question in this State. It has been so re-
peatedly declared as the law by this court, and is so
well known to the bench and bar, that citation of
authority would needlessly incumber the opinion. It
is equally as well settled that such damages may, in
proper states of case, be allowed for acts of omission
as well as acts of commission, for the failure to per-

form a manifest duty, as well as for the negligent performance of an act that involves a breach of duty, and also that it is a proper element of damage in actions against corporations for the acts of their agents, as well as in actions against persons. And it is generally considered, by courts and textbook writers, that punitive damages are awarded as a civil punishment inflicted upon the wrongdoer, rather than as indemnity to the injured party, although, as he will be the beneficiary of the punishment inflicted, it might with much propriety be said that they are allowed by way of remuneration for the aggravated wrong done. Chiles v. Drake, 2 Metc. (Ky.) 146, 74 Am. Dec. 406; Milwaukee & St. P. Ry. Co. v. Arms, 91 U. S. 489, 23 L. Ed. 374; Lake Shore & Michigan Sou. Ry. Co. v. Prentice, 147 U S. 101, 13 Sup. Ct. 261, 37 L. Ed. 97; Sutherland on Damages, sections 391-3; Sedgwick on Measure of Damages, sections 347, 388; Doerhoefer v. Shewmaker, 123 Ky. 646, 97 S. W. 7, 27 Ky. Law Rep. 1193.

A more difficult question is presented when it is attempted to fix the sum that in reason a jury may award. It is not practicable to say, even approximately, what amount of punitive damages a jury may assess in a case where this character of damages may be allowed. It is even more difficult of approximation and ascertainment than the correct measure of compensatory damages in personal injury cases. In the very necessity of things the amount must depend upon the facts and circumstances of each particular case. And so the amount that may be awarded as punitive damages must necessarily be left to the sound discretion of a jury, although we do not mean to hold that a jury is at liberty to award any amount it may see proper as punitive damages, or

that the assessment of such damages will not be reviewed. We do not know of any general rule that can be laid down upon this point, except that the damages must not be so excessive as to indicate that the jury was influenced by passion or prejudice, and must have some reasonable relation to the injury and the cause of it, and not be disproportionate to the one or the other. 12 Am. & Eng. Ency. of L. 53; 13 Cyc. pp. 112, 119; Sedgwick on the Measure of Damages, section 388. Applying these general rules to this case, we find that the injury was serious, and the cause such negligence as indicated a reckless and wilful disregard of human life on the part of the defendant corporations. So that it is a case calling for more than compensatory damages, and one that authorizes the infliction of exemplary damages as a punishment and, comparing the amount assessed with the injury sustained and the gross negligence that caused it, we are not prepared to say that it is so unreasonable or disproportionate to the standards by which it must be measured as to authorize us to interfere with the finding of the jury, to whose hands was committed the amount that should in reason be awarded.

It is also argued that the jury erred in finding separate verdicts against the two defendant companies. We do not think so. Two or more wrongdoers, whose joint or concurrent acts of negligence have produced the injury complained of, may be joined as defendants in the same action; and there may be a joint or several verdict against them. The jury may find in favor of one or more, and against one or more. They may also, the law and facts justifying it, assess punitive damages against one or more and compensatory damages against others. In

short, where two or more tort-feasors are sued, the question as to the amount of damages that may be assessed against each, and whether it shall be compensatory or exemplary or both, is for the jury. Beavers v. Bowen, 93 S. W. 649, 29 Ky. Law Rep. 526; Alexander v. Humber, 86 Ky. 565, 9 Ky. Law Rep. 734, 6 S. W. 453; Central Passenger Railway Co. v. Kuhn, 86 Ky. 578, 6 S. W. 441, 9 Am. St. Rep. 309; Bonte v. Postel, 109 Ky. 64, 58 S. W. 536, 51 L. R. A. 187, 22 Ky. Law Rep. 583.

The instructions of the court on the subject of contributory negligence is also complained of, but we do not think it is subject to the criticism made. On the contrary, it submitted correctly this feature of the case.

The instructions which are as follows express our views of the law of this case as it should have been and was given to the jury.

"(1) It was the duty of plaintiff, Phillip B. Roth, in approaching the railroad crossing at Twelfth and Washington streets, in the proof described, to use such care as an ordinarily prudent person would exercise under the same or similar circumstances to discover the approach of trains and to keep out of their way.

"(2) It was the duty of the defendant, the Louisville & Nashville Railroad Company, in the operation of its train at the time and place mentioned in the proof, to give such notice of the approach of its train to the crossing, to run its said train at such speed, to keep such lookout, and to use such care to avoid injury to persons thereon, as might usually be expected of ordinarily prudent persons operating a railroad under like circumstances.

"(3) It was the duty of defendant, the Covington

& Cincinnati Elevated Railroad & Transfer & Bridge Company, to watch said crossing, and to give reasonable and timely warning of the approach of said Louisville & Nashville train to travelers on said street about to cross said intersection.

"(4) If the jury believe from the evidence that, as the train of defendant, the Louisville & Nashville Railroad Company, approached said crossing, in the proof described, said defendant's agents and employes in charge thereof negligently failed to give such notice of the approach of said train to said crossing, or negligently failed to run its train at such speed, or negligently failed to keep such lookout, or negligently failed to use such care, as might usually be expected of ordinarily prudent persons operating a railroad under like circumstances, in order to avoid injury to persons on or about to pass over said crossing, and that by reason of such negligent failure, if any, on the part of said defendant or its employes to so act or manage said train, the train collided with the wagon driven by plaintiff, and that by reason of such collision, and by reason of such negligent act or omission of said defendant's employes, if any, plaintiff was injured, and if they further believe that plaintiff, when he drove on said track in front of said train, was himself in the exercise of ordinary care on his part, as hereinafter defined, the jury will find a verdict for plaintiff; otherwise, they will find a verdict for the defendant, the Louisville & Nashville Railroad Company.

"(5) If the jury believe from the evidence that the defendant, the Covington & Cincinnati Elevated Railroad & Transfer & Bridge Company, or its employe or agent in charge of said crossing, operating the gates at same, negligently failed to give rea-

sonable and timely warning to plaintiff of the approach of said train to said crossing, and that by reason of such negligent failure, if any there was, plaintiff, while in the exercise of ordinary care on his part, drove on said crossing, was injured by reason of the collision and said injury, if any injury there was to plaintiff, was the result of such negligent failure, if any, on the part of the defendant bridge company or its employes to give such warning to plaintiff, the jury will find a verdict for the plaintiff against the defendant, the Covington & Cincinnati Elevated Railroad & Transfer & Bridge Company; otherwise they will find a verdict for said defendant.

"(6) If the jury find a verdict for the plaintiff, the measure of his damage will be a fair and reasonable equivalent in money for the physical pain, if any, and mental suffering, if any, which he has endured, and which it is reasonably certain he will in the future endure, if any, and for any permanent impairment or reduction of his power to earn money, if any as the direct and proximate result and plain consequence of the injuries sustained by him, if any; and, if the jury believe from the evidence that the negligence of the defendants, or either of them, if any there was, at the time and place referred to in the proof, was gross negligence, as hereinafter defined, then the jury may, in their discretion, governed by the proof, award plaintiff, against such defendant or defendants, a further sum by way of punitive damages or smart money, not exceeding in all, however, the sum of $20,000, the amount claimed in the petition.

"(7) If the jury shall believe that the defendant, the Louisville & Nashville Railroad Company, was negligent in the operation of its train at the time when and the place where the plaintiff was injured,

and they shall also believe that the plaintiff himself was negligent in the manner in which he approached and drove upon said railroad tracks, and that the collision and subsequent injury to plaintiff would not have happened to him except for such negligence on his part, if he was negligent, then the jury shall find for the defendant, the Louisville & Nashville Railroad Company.

"(8) The court instructs the jury that the plaintiff had no right to rely exclusively upon the operatives of the gates or the railroad train in looking out for his safety and giving him notice of danger, but that the plaintiff was required to use ordinary care for his own safety; and, if he did rely exclusively upon the operatives of the gates or of the railroad train, without using ordinary care for his own safety, then he was guilty of contributory negligence, and your verdict must be for the defendants.

"(9) If the jury believe from the evidence that both of the defendants were negligent, under the instructions above given, and that such negligence, if any, of both defendants concurred in producing the injury to plaintiff, if any, and that plaintiff ought to recover damages against both defendants under the instructions herein, they may find a joint verdict against the Louisville & Nashville Railroad Company, and the Covington & Cincinnati Elevated Railroad & Transfer & Bridge Company, and they may then apportion such amount as they may so find between the defendants, and find a separate verdict against each defendant for the amount so apportioned against it; but in no event shall the recovery against both defendants exceed the sum of $20,000, the amount claimed in the petition.

"(10) Ordinary care as used in these instructions

means that degree of care ordinarily exercised by ordinarily careful and prudent persons in the same or smilar business, or under the same or similar circumstances.

"(11) Negligence or negligently, as used in these instructions means the failure to exercise ordinary care.

"(12) Gross negligence is the failure to exercise slight care.

"(13) Nine jurors may find a verdict; but, if less than 12 unite in a verdict, all those so uniting must sign same."

The judgment of the lower-court is affirmed.