## Payne, Agent, et al. v. Barnette's Administrator.

(Decided November 17, 1922.)

## Appeal from Lincoln Circuit Court.

1. Railroads — Contributory Negligence — Crossings — Signals. — A highway traveler is not guilty of contributory negligence as matter of law because he attempted to cross a double track railroad immediately behind a train traveling on the near track without waiting to see if a train was approaching on the other track from the opposite direction, where a signal crossing bell that had been ringing had ceased to ring when the crossing had been cleared by the train on the near track.

2. Railroads—Signals.—Verdict is not unsupported by or flagrantly against the evidence finding that statutory crossing signals were not given where some witnesses testify positively they were given and others that were located where they could have heard them if given, testify that they heard none.

3. Railroads—Crossings—Signals.—It is error to impose upon trainmen a duty of giving other than statutory crossing signals for a crossing at which the company maintains a guard, gates or signal bell to warn travelers of the approach of trains.

4. Railroads—Crossings—Signals.—Where a signal bell is maintained at a crossing, the company is bound to exercise ordinary care to see that it is in effective working order, and is liable for injuries to persons using the crossing for its failure so to do.

JOHN GALVIN and K. S. ALCORN for appellant.

C. C. BAGBY, J. S. OWSLEY, JOHN D. CARROLL and L. W. WALKER for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

On January 9, 1920, George B. Barnette was riding in an automobile driven by Carlton Elkin. As they were crossing the tracks of the Cincinnati, New Orleans and

Texas-Pacific Railroad near Hustonville in Lincoln county, Kentucky, the automobile was struck by a passenger train and Barnette was killed.

In this action by his administrator against the Director General of Railroads and the train engineer, the plaintiff recovered a judgment for $20,000.00 damages, and the defendants have appealed.

A reversal of the judgment is asked because (1) the court refused to direct a verdict for defendants, (2) the verdict is not supported by the evidence, (3) error in the instructions given, and (4) the verdict is excessive.

1.   In support of the contention for a directed verdict it is insisted the decedent was guilty of contributory negligence as matter of law.   Elkin had invited Barnette to ride with him from Danville to Hustonville.   Both were sitting on the front seat of the automobile, the former at the wheel on the left, and the latter on the right side thereof.   At the public crossing where the accident occurred, the railroad is double-tracked and runs nearly due north and south.   Trains going north use the east main track, and those going south the west main track.   The pike along which the automobile approached the crossing from the east nearly parallels the railroad tracks for half a mile or more, the intervening space being about 100 yards wide at the widest place gradually narrows to a "V" at the crossing.   The land between the pike and the railroad tracks is nearly level, and for a distance of 500 feet before the crossing is reached there is no obstruction between the turnpike and the railroad right of way except some telegraph poles and a wire fence, but from the crossing for some distance back toward Moreland station and in the direction from which the automobile was approaching, the railroad tracks are in a cut which, however, is not of sufficient depth to conceal a train therein, as it is not more than about six feet deep at any place.

As Elkin and Barnette approached the crossing, a freight train was also approaching it on the near or east track, and seeing this Elkin stopped the automobile a short distance from the track and waited for the freight train to pass.   As soon as this train cleared the crossing, or at least before it was possible to see whether or not a train was approaching on the other track, Elkin started the car and when it reached the far or west main track, it was struck by a fast passenger train coming from the north.

When they stopped to let the freight train pass, Barnette unbuttoned the curtains on his side of the automobile and as they started to cross the tracks was looking in the direction in which the passenger train was approaching, and although he could see the west track upon which it was coming but a little way—not more than 50 feet under any of the evidence, because of the fact the freight train had not cleared his view of the track for a greater distance—he made no remonstrance when Elkin started across the tracks or at any time before the automobile was struck.

Conceding that Barnette was a guest in the automobile and not liable for any negligence upon the part of Elkin, it is insisted that by failing to remonstrate with Elkin in attempting to cross the tracks before it was possible to ascertain whether or not a train was approaching on the far track, he tacitly consented to the attempt and was guilty of contributory negligence as matter of law.

It is quite clear that if Elkin had waited but a moment or two before attempting to cross the tracks behind the freight train, both he and Barnette would have seen the passenger train approaching and avoided the collision.

Assuming for the moment that the railroad company, through its agents in charge of the passenger train, was guilty of negligence by failing to give signals for the crossing at which the accident occurred, both Barnette and Elkin might have been guilty of contributory neglect as matter of law in attempting to cross the tracks as soon as the freight train had cleared the crossing, without waiting until it had gotten a sufficient distance away to enable them to see whether a train was approaching from the opposite direction on the other track, if it were not for other evidence in the record than that detailed above —to which counsel for the defense do not even refer in this connection—which in our judgment not only easily differentiates this case from those upon which the defendants rely but also renders the attempt to cross the tracks as soon as the freight train had passed, free from contributory negligence as matter of law, even considering Barnette as responsible therefor as Elkin.

The cases relied on by the defendants and which are pertinent only where the evidence is about as so far discussed, are: Marty v. Chicago, etc. Ry Co., 38 Minn. 108; McCrory v. Chicago, etc. Ry. Co., 31 Fed. 531; Heaney v. Long Island Railroad, 112 N. Y. 122; and this

court in the case of Wright v. C. N. O. & T. P. Ry. Co., 14 Ky. Law Reporter 788, gave expression to a similar view of the law as expressed in those cases.

The evidence in this case, which in our judgment not only renders the doctrine of the above cases inapplicable but also makes it unnecessary for us to decide whether or not decedent would have been guilty of contributory negligence as matter of law under the circumstances related above, is as follows: At this crossing the railroad company, in addition to the customary cross-arm crossing signal, has maintained for some time a post supporting an electric bell to warn travelers on the turnpike of the approach of trains on the railroad tracks, and while the testimony is not very clear on the point, it is at least a fair inference therefrom that upon this occasion this bell was ringing during the time the freight train was passing, and that as soon as the crossing had been cleared by it, the bell quit ringing. As a consequence the question not discussed by counsel for defendants necessarily arises, whether or not a traveler on the highway is guilty of contributory negligence as matter of law in assuming that both tracks were free of danger when the bell ceased to sound the signal of danger.

We have frequently held, and correctly we are sure, that when a railroad company, at a public crossing in a city where many persons are constantly crossing its tracks, maintains a guard or gates, a traveler on the highway, bound to exercise ordinary care for his own safety, is not guilty of contributory negligence as matter of law, if not knowing that a train is approaching, the assurance of safety, conveyed by a signal from the guard to cross or by gates being open, is acted upon. Sights v. Louisville & N. R. R. Co., 117 Ky. 436, 78 S. W. 172; L. & N. R. R. Co. v. Wilson, 124 Ky. 836; Louisville Bridge Co. v. Maroney, 32 Ky. Law Reporter 705; Schulte v. L. & N. R. R. Co., 128 Ky. 627; L. & N. R. R. Co. v. Roth, 130 Ky. 759.

The principle is the same, however, whether the crossing is in the city or in the country and whether the assurance of safety is conveyed by a signal from a guard or by open gates or by the ceasing of a bell to sound its danger alarm, and we find in the note to Union P. R. R. Co. v. Rosewater, 15 L. R. A. (N. S.) 803, the following pertinent statement:

"The general rule undoubtedly does not require a traveler about to use a grade crossing to exercise the

same vigilance in looking and listening when he is signaled by a flagman 'to cross as when the approaches are not guarded, and the decisions as to the circumstances under which, and to what extent he may relax his vigilance are widely divergent, and each depends to a large extent on its own surrounding circumstances. However, this question is one almost universally for the determination of a jury, as it is only in exceptional cases that the question of contributory negligence can be decided as a matter of law."

We are of the opinion that, under the facts of this case, the court did not err in refusing to direct a verdict for defendants.

2. The insistence that the verdict is not supported by the evidence is based in part upon the contention that plaintiff was guilty of contributory negligence, and in addition upon the claim that it was conclusively shown that the statutory crossing signals were sounded by the passenger train as it approached this crossing.

What we have said completely disposes of the first of these contentions, and the second is also without merit. Several witnesses for defendants, including the engineer and fireman, testified positively that these signals were given, but as many or more witnesses who were in a position to have heard them if given, testified that they heard none. We have uniformly held in such circumstances. that a verdict finding the defendant guilty of negligence is sufficiently supported by and is not flagrantly against the evidence. C. & O. R. R. Co. v. Brashear's Admr., 124 S. W. 277; C. & O. R. R. Co. v. Hawkins, 124 S. W. 836; C. & O. R. R. Co. v. Nipp, 125 Ky. 49.

3. The court properly instructed the jury that it was the duty of defendant's servants in charge of the train to give the statutory signals of its approach to the crossing where the accident occurred, and in addition instructed them that:

"If the crossing was especially dangerous and by reason thereof the signal by bell or whistle (from the train) was not reasonably sufficient under the circumstances to warn travelers on the highway of the approach of the train, then it was the duty of the defendant's servants in charge of the train to use such other means to give warning of the approach of the train as an ordinarily prudent person operating a railroad would have adopted under like circumstances,"

and that if defendants failed to perform their duty as thus defined and by reason thereof the accident occurred, the jury should find for the plaintiff, unless they believed that the decedent was negligent as defined in the contributory negligence instruction.

We are of the opinion it was error and highly prejudicial to the defendants to submit to the jury the question of whether or not the crossing was especially dangerous, both because there was no evidence of the character present in the case of L. & N. R. Co. v. Treanor's Admr., 179 Ky. 337, 200 S. W. 634, and like cases from this court approving such an instruction; and because the principle upon which such instructions are held to be proper is not involved where the railroad company for the safety of the traveling public maintains a guard or mechanical appliance at the crossing to give additional warning to highway travelers of the approach of trains over and above the train signals required by the statute.

To sustain the contrary contention of the appellee would not only conclude the railroad company upon the question of whether or not a crossing was an especially dangerous one, and require extraordinary signals or precautions from trainmen approaching such crossings simply because it had elected to establish a crossing signal out of regard for the safety of highway travelers, but would also impose upon it the burden of seeing that such signals were at all times in working condition.

It is right and proper that the company should be required to use ordinary care to see that such safety appliances as it may elect to erect, without statutory requirement and upon which the public may rely, are in working order and it will be held liable for injuries resulting from its neglect so to do; but, having taken upon itself this additional burden to safeguard the traveling public from harm, it would be extremely unfair and clearly beyond the contemplation of the Treanor and like cases to hold that as a result of this commendable effort to protect the traveling public the railroad company thereby confessed the crossing was an especially dangerous one; and that in addition to having voluntarily assumed the duty of maintaining the stationary crossing signals, it had also imposed upon the operatives of its trains an obligation "to use such other means to give warning of the approach of the train as an ordinarily prudent man operating a railroad would have adopted under like circumstances."

It is perfectly clear that if at an especially dangerous crossing the railroad company erects and maintains a guard, gates, or electric bell to warn travelers of the approach of trains, operatives of its trains ought not in good conscience be required to assume the burden which the Treanor and like cases placed upon them over and above those imposed by statute, because that burden was judicially imposed upon the sole ground that at such a place the statutory signals were not reasonably sufficient for the purpose of effectively warning travelers of the train's approach; and the reason upon which the doctrine of those cases is based is entirely lacking where the railroad company has erected at a crossing appliances which if maintained in order will give to the travelers such effective notice as they can hardly fail to observe if they exercise any degree of care whatever for their own safety, and as the trainmen could not possibly give with any means at their command.

We are therefore clearly of the opinion that the court committed prejudicial error in instructing the jury upon the hypothesis either that the doctrine of the Treanor and like cases was applicable to a case like this, or that the evidence warranted a submission to the jury the question of whether or not this was an especially dangerous crossing, even if the company had not maintained a signal bell at the crossing.

As for this reason the judgment must be reversed, it will not be necessary to discuss whether or not the verdict is excessive, and that question is left open.

Wherefore the judgment is reversed, with directions for a new trial consistent herewith.