## Winston & Co. v. Clark County Construction Co.

(Decided January 16, 1920.)

### Appeal from Clark Circuit Court.

1. Principal and Agent—Identity of Principal—Parol Proof—Fictitious Name.—It is competent to identify by parol proof either a disclosed or an undisclosed principal so as to charge him as a party to a contract executed exclusively in the name of his agent, and a fortiori is it proper to show that one appropriating the name of another or using a fictitious name intended to become personally liable or bound thereby to the other party to the contract; but this rule will not apply where one seeking to charge a known but undisclosed principal has unreasonably delayed action until such principal has changed his attitude, nor will it apply where the

proof shows that credit was given exclusively to the agent, nor to negotiable instruments.

2.  Contracts—Items of Charges.—Where a contract provided that plaintiff should receive for the work agreed to be done by him the cost price plus an agreed profit, the salary of plaintiff's superintendent for the time he devotes exclusively to the work, as well as the premium on an indemnity policy taken by plaintiff for the protection of its employees while engaged in the work are legitimate items of cost, especially in view of the evidence of a custom to make such charges.

3.  Contracts—Construction of.—Where a contract provided for pay for extra hauling of material "by wagon when necessary," the contractor is not required by the word "necessary" to haul from the nearest point, but he may take into consideration the difficulties of transportation by wagon, and use that route which is the more practical and expedient. although the distance may be greater.

4.  Contracts—Furnishing Material by Contractor.—When defendant agreed with a contractor to furnish certain material for which the latter is to receive pay only for placing it in the structure, any cost incurred by the contractor in shaping the material to fit the structure may be charged for by the contractor

PENDLETON & BUSH for appellants.

J. M. STEVENSON for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellant and defendant below, Winston & Company, is a partnership, and will hereafter be referred to as defendants. The appellee and plaintiff below, Clark County Construction Company, is a corporation, and will hereafter be referred to as plaintiff.

The plaintiff, claiming a contract with the defendants to construct a concrete culvert and a concrete viaduct on a line of railroad between Winchester, Kentucky, and Irvine. Kentucky, brought this suit to recover the unpaid balance of $5,048.43 alleged to be due it in the performance of such work.

The answer was a denial of the allegations of the petition, and the jury empaneled to try the issue as to the existence of the contract returned a verdict in favor of plaintiff. The issue as to the amount due plaintiff, if anything, involving complicated accounts, was referred to the master commissioner of the Clark circuit court, and he reported a balance due it of $3,704.10.   Both parties filed exceptions to the report, some of which were sustained and others overruled.   The court gave judg-

ment in favor of plaintiff for $3,542.86, and to reverse that judgment the defendants prosecute this appeal.

The defendants are engaged in construction work, and in the year 1913 they had a contract with the Louisville & Nashville Railroad Company (hereinafter referred to as the railroad company) to construct a new line of railroad from Winchester, Kentucky, to Irvine, Kentucky. They sublet the work in sections to other contractors, one of whom was the Jones-Gray Construction Company (hereinafter referred to as the subcontractor), who had a contract for a three-mile section, and in which it was necessary to build a box culvert at one place and a viaduct at another. In the original contract between the defendants and the subcontractor it was stipulated that these structures should be built of wood, but it is said by the attorneys that the contract provided that if the railroad company should conclude before the completion of the work to have the structures made of concrete, the subcontractor would do so, receiving therefor increased pay for that character of work.

Under the contract between the railroad company and the defendants the entire work, including that section sublet to the subcontractor, was to be completed some time in October. Before the latter part of July the railroad company concluded to have the culvert and the viaduct made of concrete, and so notified the defendants, who mentioned the matter to their subcontractor, whereupon there was some dispute as to whether the latter was compelled under its contract to construct the work in the altered form. It seems, however, that this was soon agreed to, and the subcontractor approached plaintiff, it being engaged in doing concrete work, to build the culvert and viaduct, they being at stations 884 and 885 in the line of railroad being built by the subcontractor.

In the negotiations which followed, the subcontractor submitted to the plaintiff a list of prices, as well as stipulations for the concrete work, and the latter declined to undertake it at the prices submitted. Subsequent meeting of the parties resulted in no further progress, and about the last of July or the first of August the plaintiff's president, and also its general manager, went to the office of defendants, who were anxious for the work to be completed in the time specified in their contract, and plaintiff proves by its president and also by its general manager that in this meeting there was

an oral contract agreed to in which the price for each item of the work, as well as material, was stipulated, and plaintiff soon thereafter moved its machinery to the place where the concreting was to be done and commenced work. The first estimate for work done by it was due on September 20, following. It was made out, but the railroad company declined to pay because plaintiff had no written contract. Application was then made by plaintiff to defendants to reduce the contract to writing, which up to that time rested in parol only, and on October 10, 1913, defendants sent to plaintiff a prepared contract dated September 25th, accompanied by this letter:

"Winchester, Ky., October 10th, 1913.

"The Clark County Construction Company,
    Winchester, Ky.

"Gentlemen:—

"Enclosed we send you contract between yourselves and the Jones-Gray Construction Company for concrete work on the Jones-Gray contract.

"On receipt of the enclosed contract signed by you, we will then give you memorandum of agreement between W. & Company and yourselves. Yours very truly,
    "WINSTON & COMPANY."

The next day plaintiff returned the contract to defendants unsigned, with a letter pointing out wherein its terms differed from those orally agreed to, that difference consisting in the price to be paid for the construction of the two abutments to the viaduct, and for three other items relating to the price of sand, cement, etc. Later plaintiff received the contract sued on from the subcontractor, with the suggested alterations therein with reference to the three items of the cost of material, but it did not contain what plaintiff claimed to be the contract with reference to the construction of the abutments. Plaintiff added that clause and returned the contract to the subcontractor, inasmuch as it had been sent by the subcontractor, and it was signed by the latter on November 8, 1913.

It would serve no useful purpose to set out the contract in full in this opinion, since it is quite long, and would throw no light upon the questions involved. Suffice it to say that it purports on its face to be executed between the subcontractor on the one side and the plaintiff on the other.

One of the chief contentions urged by defendants for a reversal of the judgment is that the contract sued on was never entered into by them, but that it was one exclusively between the subcontractor and plaintiff. On the trial before the jury which found this issue in favor of plaintiff, its president and also its general manager testified that the contract was with defendants and not with the subcontractor. Opposing this, defendants' general manager testified that his company entered into no such contract, and Mr. Jones, an officer of the subcontractor, gave the same testimony.

It is also urged in behalf of defendants that they already had a contract with the subcontractor for the work out of which this litigation grows, and there was no need to make a contract with another for the same work. The fact that the contract on its face purports to be one made between plaintiff and the subcontractor is another circumstance relied on by defendants, who say that they did not write the letter quoted above, of date October 10, but that their stenographer, without their authority, wrote it. But be this as it may, before the contract was signed by the subcontractor, and while plaintiff was making efforts to have the contract reduced to writing, defendants wrote plaintiff a letter of date October 21, in which they said, *inter alia,* "Confirming our verbal agreement, we hereby guarantee that if the price of $10.25 per cubic yard for concrete, $1.10 for screenings or sand and one and one-half cents per pound for placing reinforcing iron, does not give you one ($1.00) dollar per cubic yard profit on the construction of the two abutments for viaduct at station 885, that we will pay to you (on completion of the work) such sum as may be required to give you a profit of one ($1.00) dollar per cubic yard on concrete placed in these two abutments."

Plaintiff claims that this letter, which was intended to be a contract, did not set forth its full terms, but the excerpt taken therefrom shows that there had been a "prior verbal agreement" and that defendants were negotiating directly with the plaintiff notwithstanding it had a contract for the work with its subcontractor. So we conclude that there was sufficient testimony to authorize the jury to return the verdict complained of.

But just here it is strongly urged that in the absence of an allegation of fraud or mistake in the execution of a contract it was incompetent to show by oral proof that

the defendants were parties thereto, and much discussion is indulged in with reference to the right of one to charge an undisclosed principal upon a contract executed by an agent in his name only. Counsel for defendants does not deny the fact that it is competent to charge by oral proof an undisclosed principal, but he says that defendants, who are sought to be charged as principals here, were not unknown to plaintiff. Not only so, but reliance is made on the fact that the contract sued on says that it is made "in accordance with the terms and conditions of your (subcontractor's) contract with Winston & Company," and that this effectually deprives or estops plaintiff from charging Winston & Company as a party to the contract.

That an undisclosed principal may be identified by parol evidence is shown in Mechem on Agency, second edition, sec. 1733, wherein the learned author says:

"For the purpose of identifying the principal, parol evidence may be admitted. It does not violate the principle which forbids the contradiction of a written agreement by parol evidence, nor that which forbids the discharging of a party by parol from the obligations of his written contract. The writing is not contradicted, nor is the agent discharged; the result is, merely, that an additional party is made liable. As is said by a learned judge in a Massachusetts case: 'Whatever the original merits of the rule that a party not mentioned in a simple contract in writing may be charged as a principal upon oral evidence, even where the writing gives no indication of an intent to bind any other person than the signer, we can not reopen it, for it is as well settled as any part of the law or agency.' "

Many cases from various states of the Union, and from the Supreme Court of the United States, are cited in support of the text. It is also supported by the English case of Calder v. Dobell, L. R., 6 C. P. 486, and others. The same principle has also been approved by this court, as will be seen from the opinion in the case of Geary v. Taylor, 166 Ky. 501. In that case the Flat Rock Coal Company was charged as a principal in a contract executed in the name of its agent alone, and in upholding the right to do so the court said:

"It is the rule that a principal may be charged upon a written simple executory contract entered into by an agent in his own name within his authority, although the

name of the principal does not appear in the instrument and was not disclosed. Ford v. Williams, 21 How. (U. S.) 287, 16 L. Ed. 36; Eastern R. Co. v. Benedict, 5 Gray (Mass.) 561, 66 Am. Dec. 384, 2 C. J. 683: This is true, notwithstanding the rule of law that an agreement reduced to writing may not be contradicted or varied by parol, for it is held that such proof does not contradict the writing, but only explains the transaction.''

Nor is the doctrine confined to the identification of undisclosed principals. Most respectable authority exists holding that it is competent to charge by parol proof a known principal at the time the contract was entered into with the agent, as well as to charge an unknown one. Storey on Agency, section.160a; Byington v. Simpson, 134 Mass. 186; Bank of Pennsylvania v. Myerstein, 24 Maryland, 463; Higgins v. Senior, 8 Mees & Wells 834.

In the Byington case, the court through Justice Holmes, now of the Supreme Court, upon this point, said: ''We are of the opinion that the plaintiff's knowledge does not make their case any weaker than it would have been without it.''

Exceptions to the general rule are that the identification of the principal in this manner will be denied in cases where the undisputed facts show that plaintiff gave credit exclusively to the agent, or where on the account of unreasonable delay he has permitted the undisclosed principal to change his attitude, which is in the nature of an estoppel, and the rule does not apply in the case of negotiable instruments. Mechem on Agency, section 1736.

The case of Violet v. Powell's Admr., 10 B. Mon. 374, relied on by counsel for defendant asserts only the first mentioned exception where plaintiff gave credit exclusively to the agent. The two cases of Wedekind & Co. v. Kennedy, 17 Ky. Law Rep. 257, and Megibben v. Shawhan's Admr.; 10 Ky. Law Rep. 407, also relied on, had under consideration and dealt with the exception that the rule does not apply to negotiable instruments. So that the opinions in neither of these cases militate against plaintiff's contention.

But, independent of what the true rule may be in such cases, the facts of the instant one are different from those upon which the text of Mr. Mechem quoted above, and the opinions cited, are. founded. Those authorities

are dealing with cases where plaintiff negotiates exclusively with the supposed agent, while here the proof is that the contract was first entered into orally by plaintiff and Winston & Company, the principal, and that when it was subsequently reduced to writing in the name of the subcontractor, its name was used in lieu of that of the principal. In other words, according to the testimony of plaintiff's witnesses the defendants adopted the name of the subcontractor in reducing its original oral contract with plaintiff to writing for the purpose of "having things go through the regular channel," the "regular channel" being for the estimates to be handed in by plaintiff to the subcontractor, and for the books of defendants to show that payment was made to it, and thus avoid additional bookkeeping, etc.

It has often been held by this and other courts that one may adopt any name he chooses in executing a contract and be bound thereon, if his intention in executing it in such adopted name is to become personally bound. What has been said disposes of the objection that the court erred in overruling the demurrer to the petition.

Coming now to a consideration of the objections to the amount of the judgment we find that some of the items allowed are admittedly correct, and we will briefly notice only some of those of which criticism is made. The first one is the item of $863.28, for hauling sand, stone, cement and iron. The contract provided for one mile of free hauling of these substances and a stipulated charge for a greater distance, the specifications saying "When necessary to haul stone, brick, sand or cement more than one mile by wagon, the contractor will be paid the contract price per yard per mile on wagon haul for distances in excess of the one mile free haul."

The extra hauling for which the court made allowance was from Winchester, Kentucky, to the work, a distance of about twenty-two (22) miles, and it is contended by defendants that a shorter haul could have been made from Irvine, Kentucky, a distance of about eleven miles, and that in as much as the contract provided for paying for hauling above one mile only when necessary "by wagon," defendants should not be required to pay for hauling any greater distance than from Irvine to the work. But, according to the proof, plaintiff had the material on its yard in Winchester, between which place

and the work there was a macadamized pike for a greater part of the distance, while between Irvine and the work there was no pike, and the roads were in bad condition. Furthermore, to transport the material from Winchester to Irvine by rail it would have had to be sent to Richmond and there change cars for Irvine, a total distance by rail of more than thirty (30) miles. We are convinced that the word "necessary" in the stipulations should not be so construed as to absolutely require plaintiff to haul over the shortest distance from the work to a railroad station, but rather it should be construed so as to permit it to haul over the route which would enable it to get the material to the work with the greatest facility and in the quickest time. We therefore conclude that there was no error in allowing this item.

Another item allowed by the court and objected to was $170.00 paid by plaintiff for indemnity insurance, whereby it was insured against accidents to its laborers while performing the work. The proof showed that it was customary to make such charges in this character of contract, and nothing is shown to the contrary. This requires us to leave this item undisturbed.

Another item objected to is one of $250.00 salary of plaintiff's general manager who superintended the construction of the work. It was shown that this is usual and customary, and we are referred to no authority disallowing such charges. If the general manager had not superintended the work, manifestly it would have been necessary to hire one for that purpose, and the wages of such one would no doubt have been a legitimate item entering into the total cost of the work, which defendants agreed to pay, plus one dollar per cubic yard profit.

The only other item which we deem it necessary to notice is that of $218.08 charged for bending steel placed in the re-enforced concrete abutments. The contract provided that plaintiffs were to receive for "placing only" the steel in the abutments the sum of one and one-half cent (.01½) per pound, the steel to be furnished by the railroad company, and being the only item of material furnished by it. It is therefore insisted that this item charged for bending the steel so as to fit the curvature of the abutments is improper, inasmuch as it was the duty of plaintiff to place the steel furnished by the railroad company in them. The contract, however, provided for only "placing" the steel, and made no provisions for

preparing the steel in condition to be placed. It was evidently contemplated that the railroad company in furnishing the steel would have it so shaped and of such dimensions as to fit in the work being constructed so that plaintiff would have nothing to do but *place* it. Manifestly, if the steel had not been of the proper length, and plaintiff would have had to make it so, it would have been entitled to the cost incurred, and when it was furnished in such condition as not to fit the structure plaintiff should receive pay for the additional labor necessary to make it so, as this would be labor performed in addition to merely placing the steel where the contract contemplated. We therefore find no fault with this item.

Other items of less importance are objected to, but upon a critical examination of them we have concluded that the objections are without merit, and that upon the whole case the judgment was proper and it should be and is affirmed.