In re S & T INDUSTRIES, INC., Keith-Simmons Hardware, Inc., Debtors.

S & T INDUSTRIES, INC., Plaintiff,

v.

Christian H. GLANZ, Jr., Defendant.

Bankruptcy Nos. 3–85–00593, 3–85–00594.

Adv. No. 3–85–0089.

United States Bankruptcy Court, W.D. Kentucky.

May 6, 1986.

James R. Higgins, Jr., V. Lynne Schroering, Louisville, Ky., for plaintiff.

Louis M. Nicoulin, Louisville, Ky., and James W. Conway, Shepherdsville, Ky., for defendant.

## MEMORANDUM–OPINION

G. WILLIAM BROWN, Bankruptcy Judge.

This matter comes before the Court on a Complaint filed by the debtor on an account receivable allegedly due and owing by the defendant, Christian H. Glanz, Jr., d/b/a Maryville Hardware. At the outset, it is noted that this proceeding is for the collection of an account receivable comprising a part of the estate of the debtor; that the defendant, in person and by counsel, has participated in all pre-trial proceedings, and that an actual trial has been held on the merits of the issues presented. At the conclusion of the trial both parties submitted the issues to this court for a final determination. Accordingly, the Order of this court will be a Final Order based on Findings of Fact and Conclusions of Law and will be dispositive of the issues by a Final Order inasmuch as, at the minimum, both parties have agreed expressly and orally to such disposition by this Court.

Plaintiff-debtor's Complaint alleges that the defendant is indebted on an account for invoice orders delivered and unpaid in the amount of $27,824.72, plus interest on the unpaid balance. Additionally, plaintiff alleges that the defendant is indebted to it as a result of a note and security agreement which was entered into between the parties on or about May 14, 1984, wherein the defendant purchased from the plaintiff certain inventory and equipment, granting a security interest therein, which was properly perfected to assure repayment in accordance with the terms and conditions thereof. The plaintiff further alleges that said security agreement is now in default. Additionally, at the trial in chief, the plaintiff, pursuant to the Federal Rules of Civil Procedure, amended its Complaint to conform to the evidence presented and alleged additionally that the defendant is indebted to the plaintiff-debtor under the tort of conversion to the extent that the inventory covered by the security agreement has been wrongfully disposed of as a part of the plaintiff's collateral without payment therefor, and further seeks punitive damages.

Defendant, by way of Answer, alleges that initially the Security Agreement was not properly perfected and acknowledges

only that he did purchase inventory and equipment from the plaintiff and at said time executed a promissory note and security agreement covering same; that the payments due thereon have been properly made; that the balance is current and not in default. Defendant further alleges that at no time were subsequent purchases made by him nor on his behalf by any authorized agent, nor is he liable thereon.

At the trial in chief the following testimony and documentary evidence established the historical relationship between the parties as follows. On or about April 30, 1984, the plaintiff discontinued operation of an outlet store known as Maryville S & T Hardware, and through its employees sought the defendant as a purchaser of the equipment and inventory located therein. The plaintiff's employees were acquainted with the defendant from prior business dealings when the employees Chevlin and Klump had worked for one of the plaintiff's competitors. As a result of these negotiations, the defendant agreed to purchase certain inventory and equipment in the amount of $30,000.00, and executed a note and security agreement evidencing same and setting forth the terms and conditions of payment. A promissory note dated May 14, 1984 was executed by the defendant individually in the amount of $30,-000.00. On the same date, a security agreement was executed between the defendant, d/b/a Maryville Hardware S & T to the plaintiff, covering the inventory together with the standard provisions relating to the applicability of the security interest in proceeds and after-acquired property. Additionally, a Financing Statement was executed and properly recorded by the defendant d/b/a Maryville Hardware S & T. An exhibit attached thereto likewise denoted that said financing statement encompassed the inventory, stock in trade, as well as proceeds and after-acquired property. Other documents executed in the negotiation period included a Letter of Intent dated April 30, 1984, wherein the defendant stated his intent to purchase the S & T Hardware Store in question with certain expressed provisions as to the lease and financing arrangements. An Associate Store Agreement dated April 30, 1984 denotes the plaintiff as "Wholesaler" and Maryville Hardware Store as "Associate Dealer", and reflects thereon that the S & T Associate Dealer was signed by Sang Kim, an individual whose involvement and/or participation will be more extensively described hereafter.

On or substantially contemporaneous with the submission of the above-referenced Security Agreement and Promissory Note, a financial statement of the defendant's net worth condition dated April 10, 1984 was submitted to the plaintiff in consideration of this transaction.

The parties agree that the security agreement covering the inventory and equipment in the amount of $30,000.00 and promissory note were finalized between the parties and that thereafter payments substantially in conformity with the security agreement were made as provided therein. The central issue, however, is whether the defendant purchased only the inventory and equipment, or expressly or impliedly represented to the plaintiff that he intended to operate a retail store known as Maryville S & T and would be liable for subsequent purchases placed through the plaintiff's company on behalf of Maryville S & T Hardware Store. It is unquestioned that shortly after the approval of this sale, that a business venture known as Maryville S & T Hardware continued operations at the same location formerly operated by the plaintiff and that orders were placed in the name of Maryville S & T Hardware with the plaintiff and were unpaid in excess of $27,000.00, which now comprises part of the claim here asserted. It is further established that the defendant, upon the sale of the inventory and equipment, delivered the same into the custody and possession of Sang Kim, an individual who thereafter operated under the name of Maryville S & T Hardware at the same location. It must be noted that these assets at the time of delivery to Kim comprised the collateral encompassed in the security agreement and was covered by the secured interest the

plaintiff retained therein. It must also be noted that Sang Kim had previously purchased from the defendant a different hardware retail outlet known as Blue Lick True Value Hardware Store and operated at a different location. At the time of the sale of Blue Lick Hardware from defendant to Kim, the defendant took from Kim a note and security agreement in all assets including inventory, proceeds and after-acquired property of the Blue Lick True Value Store.

As previously noted, upon delivery of the assets covered by the purchase note and security agreement by defendant from the plaintiff, Kim exercised total and unfettered control of the assets with defendant's permission. Further, Kim commingled the inventory and equipment originally purchased by defendant and additionally placed orders as Maryville S & T with the plaintiff company and which upon the filing of this Complaint evidenced a balance due thereon unpaid in the amount of $27,824.72. The plaintiff alleges that these purchases were in reliance upon the defendant's financial net worth statement and upon the belief that the defendant was the owner and/or operator of the Maryville retail outlet.

The testimony establishes that Blue Lick True Value and Maryville S & T, commencing on or about May 1, 1984 and continuing through September, 1985, were solely operated by Sang Kim and that he operated these two locations under the one corporate image of Blue Lick True Value Store; that all employees at either location were employees of the one Blue Lick enterprise; that single tax returns were filed for these two locations; and that inventory and orders, as well as proceeds, were freely and continuously exchanged between these two locations. It was further established that at least $19,000.00 of purchases were actually delivered to the Blue Lick True Value Store rather than to the Maryville S & T Store.

Defendant alleges that his sole liability to the plaintiff is the remaining unpaid obligation under the promissory note and that since such note payments are current, the plaintiff has no cause of action. He submits that these purchases were not at his instigation or direction and he is not liable therefor. He further asserts that his purchase was limited to the inventory and equipment on hand as of April 30, 1984, and that he in no way envisioned nor represented that he was purchasing the store or would thereafter be obligated for any subsequent purchases.

Based on testimony and the documentary proof of record, together with the arguments of counsel, the Court specifically enters the following as its Findings of Fact:

1. That the security agreement between the parties dated April 30, 1984, was properly perfected.

2. That the security agreement and financing statement at the minimum contained an ambiguity as to whether the parties contemplated that the defendant would continue to do business as Maryville S & T Hardware Store inasmuch as said designation was denoted on the instruments under the caption "d/b/a" in addition to the name of the defendant individually.

3. That the defendant acknowledged that he was aware of the security interest of the plaintiff in the equipment and inventory initially purchased at the time of taking possession thereof.

4. That the defendant, notwithstanding such knowledge, knowingly permitted the individual, Sang Kim, to take custody and possession of the inventory and to dispose of same by sale thereof in part at the Maryville S & T location, which defendant knew Kim was continuing to operate and further, knowingly permitted the transfer in part of said inventory to the outlet known as Blue Lick True Value Hardware, where said inventory was commingled at said location so as to thereafter be subject to the defendant's personal security interest therein as a result of the obligation owed to the defendant by the individual, Sang Kim.

5. That the sole responsibility imposed on Sang Kim by the defendant was the payment of $1,000.00 per month to be credited against the defendant's liability to the plaintiff, without regard to any proceeds received from the sale of the initial inventory or proper application of the proceeds derived therefrom.

6. It is further found that on or about June, 1985, that through letters and telephonic communication, the defendant was personally apprised of the status of the open account which at the time reflected a balance of approximately $27,000.00 and has steadfastly thereafter maintained that he is not liable therefor, since he was not the owner or operator of the Maryville S & T Hardware Store.

7. Additionally, the defendant by admission on or about September, 1985, took possession of such inventory as he originally purchased and which remained in an undetermined amount in the Maryville S & T location together with other inventory then on hand, and has at all times thereafter retained custody and possession thereof.

8. That such initial inventory and subsequent orders as were directed to the Blue Lick True Value Store have continued to remain in the possession of Sang Kim at that location subject to defendant's security interest and such sales as Kim effected in an unknown amount.

■ The court finds that the plaintiff's employees, Chevlin and Klum, were well acquainted with the defendant from numerous prior business transactions and knew that the defendant was subject to a noncompete restriction in the operation of this S & T Hardware outlet. This was vital information that for whatever reason they failed to transmit to the plaintiff's credit department. To the extent plaintiff was subsequently injured by this delinquent account, such causation was largely occasioned by the actions of its own employees' conduct and knowledge versus the defendant's less than candid dealings.

It is axiomatic that a creditor in the extension of credit is charged with making a prudent inquiry as to who is liable for purchases made and is further charged with the knowledge such inquiry would have disclosed, especially where as here, its employees knew or should have known the true status of the Maryville S & T retail store subsequent to May 14, 1984.

■ The Associate Store Agreement is not ambiguous as to its terms. What is in issue is the identity of the parties. We do not here admit parol evidence to explain or supplement the meaning of the contract. Rather of necessity, such evidence is needed to identify the appropriate parties. *Winston & Co. v. Clark County Constr. Co.*, 186 Ky. 743, 217 S.W. 1027 (Ky.1920).

■ As to the plaintiff's claim for punitive damages, such is hereby disallowed. Punitive damages "are proper only when the wrongful act is wanton, malicious or reckless. There must be a showing that the acts were either willful or malicious or that they were performed in such a way as would indicate a gross neglect or disregard for the rights of the person wronged." *Ashland Dry Goods Co. v. Wages*, 302 Ky. 577, 195 S.W.2d 312, 315 (1946). Further, it is well-settled that "punitive damages are awarded as a civil punishment inflicted upon the wrongdoer, rather than as indemnity to the injured party ...". *L & N Ry. Co. v. Roth*, 130 Ky. 759, 114 S.W. 264 (1908). In view of our finding that plaintiff's employees knew or should have known the true status of the Maryville S & T store after May 14, 1984, we can find no basis for an award of punitive damages.

The above constitutes Findings of Fact and Conclusions of Law pursuant to Rules of Bankruptcy Procedure 7052. A separate Order will be entered this date.

## ORDER

Pursuant to the Memorandum-Opinion attached hereto, IT IS HEREBY ORDERED as follows:

1. That the plaintiff, S & T Industries, Inc., may accelerate the note and security agreement dated May 14, 1984 as provided for therein inasmuch as the defendant has materially defaulted thereunder by his unauthorized disposal of the collateral.

2. The plaintiff is entitled to recovery and possession of any inventory initially purchased and now in the defendant Glanz's possession which is subject to the security agreement between the parties.

3. That to the extent any identifiable inventory purchased after May 14, 1984 from the plaintiff is now in the defendant Glanz's possession, the plaintiff is entitled to recovery and possession of the same for credit on the open account.

4. That to the extent any identifiable inventory purchased after May 14, 1984 from the plaintiff is now in stock at Blue Lick True Value Hardware Store, such inventory is to be surrendered to the plaintiff for credit on the open account.

5. That any balance due on the open accounts after such credits is a claim which plaintiff may assert and liquidate against Sang Kim and/or Blue Lick True Value Hardware Store in any court of competent jurisdiction.

6. The plaintiff is further entitled and is hereby granted a judgment against the defendant, Christian H. Glanz, Jr., for the principle sum now due and owing on the promissory note in the amount of $10,000.00, plus interest at ten percent on the $4,000.00 now in default, and the further sum of fifteen percent or $1,500.00, representing attorneys fees for collection of the promissory note in question. Defendant, Christian H. Glanz, Jr., is to be given credit against these judgment amounts to the extent of the current wholesale market value of the original inventory now in his possession and which is to be surrendered to the plaintiff pursuant to Paragraph Two (2) above.

This is a final and appealable Order, and there is no just cause for delay.