## Southern Ry. Co. et al. v. Burkholder.

(Decided June 12, 1936.)

EDWARD P. HUMPHREY and MARVIN H. TAYLOR for appellants.

GEORGE J, MAYER and CHARLES G. KIPP for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This appeal seeks reversal of a judgment recovered in the amount of $675 and costs in an action brought in the Common Pleas branch, Second division, of the Jefferson circuit court by the appellee, John Burkholder, against the appellants, Southern Railway Company and others, to recover damages for personal injuries and damage to his automobile.

The appellants insist that upon the evidence introduced upon the trial, they were entitled to have a peremptory instruction given the jury, upon the ground urged that the evidence conclusively showed as a matter of law that the collision in which plaintiff received his injuries was the result of and exclusively due to his contributory negligence, characterizing the conduct of appellee in driving his car onto the track, when within a few feet of an approaching train, as negligence per se.

The undisputed facts, as shown by the record, are that the injuries and damages suffered by plaintiff arose out of a collision between the automobile which plaintiff owned and was then driving and a freight train of the appellant, Southern Railway Company in Kentucky, and that the accident occurred at the intersection of Thirtieth street and Woodland avenue in Louisville, Ky., on the night of December 22, 1934, at about 2:30 a. m.

Woodland avenue, it appears, runs substantially east and west and Thirtieth street, in which the two railroad tracks here involved are located, runs substantially north and south.

The plaintiff's automobile was, upon this occasion, being driven by him eastwardly on Woodland avenue towards Thirtieth street, by which it is intersected and crossed. At this place the railway tracks are owned

by the appellant, Kentucky & Indiana Terminal Railroad Company, and at the point of intersection it maintains crossing gates and a warning bell, which are operated by its crossing watchman from its watchtower, located upon the northwest corner of the intersection.

Upon trial of this cause and its submission to the jury upon the evidence and the instructions of the court (the appellants' motion for a directed verdict having been overruled), it returned a verdict against the corporate defendants for damages in the sum of $675 suffered by plaintiff for loss of time, by reason of his injuries, and costs, upon which judgment was accordingly entered.

The defendants, complaining of this judgment, prosecute this appeal, strongly insisting that the undisputed facts in evidence, relative to the cause of the accident, conclusively showed that plaintiff was guilty of contributory negligence, as a matter of law, barring his right to recover, and that the court committed a reversible error in overruling their motions for a peremptory instruction so directing the jury and in submitting the case to it under its instruction No. 2 here complained of.

We will now turn our attention to the matter of the showing made by plaintiff's evidence, thus criticized, wherein he details his conduct in driving onto and across the railroad tracks at this intersection, under the circumstances and dangerous conditions he testifies confronted him at the time, and which appellants contend conclusively establishes, as a matter of law, that the accident and the injuries from which he suffered were the result of his contributory negligence.

He testifies that he spent this evening of December 21, 1934, with friends at the home of Charles Rompel, playing pinochle, and at the conclusion of their game, after midnight, the members of the party left for their homes; that on his way home he observed a friend having trouble with his car and stopped to help him, when, finding that his friend's car could not be operated, he used his car as a pusher and thereby propelled his friend's car to the latter's home in the western part of the city, after which he proceeded in the most direct way to his home, which was south on Thirty-Second street to Woodland avenue and thence eastward-

ly towards Thirtieth street; that he got onto Woodland avenue at Thirty-Second street about 2:30 a. m., at which point he could see that the crossing gates at the Thirtieth street intersection were up and that he was then traveling at a rate of 25 to 30 miles an hour; that when he had traveled to within about 60 feet of the crossing, he noticed a flare of light off to the north, in the vicinity of the factories located in that district and the railroad tracks, which he states he thought could have been a light either from switch engines moving there or from some of the factories, as there were plenty of other lights there outside of locomotive lights; that his view to the north was obstructed at that point by an intervening house; that he observed that the crossing gates were not down, nor the warning bell ringing, so he continued to advance onto the crossing, and "got down like that (stooped) to see if the gates were going to come down" looking northwardly toward the crossing, when, not seeing any train and being sure that the gates remained in their normal, raised position, he proceeded to cross the tracks; that he took these special precautions because he had noticed a light on the tracks and had thought that probably it was the light of a switch engine down in that neighborhood; that he did not see any train before he advanced onto the railway crossing nor were the gates down when he got upon the crossing; that he was going about 15 miles an hour when he advanced upon the crossing, when he then first saw a train some 15 or 20 feet from him; that he did not have a chance to get out of the way; that he became excited and confused, as he "was hit dead in the center" by the train. He stated that he did not know whether, when advancing onto the tracks, he tried to stop or not; that he was then right upon the locomotive when he saw it.

In this, plaintiff's version of the circumstances and conditions under which he drove onto the tracks and the collision occurred, he is corroborated by the testimony of his witnesses, Letcher Sanders and John Zetler, both of whom room in a house adjoining the railroad tracks and the watchman's tower at this intersection. They testified that the crossing gates were not lowered, warning of the freight train's approach, nor was the warning bell ringing.

Plaintiff further testified that each of the parties,

at the conclusion of the pinochle game, had taken a drink of whisky and that later, on his way home, he had also taken a glass of beer, but that he was not affected by it. In this he is to some extent corroborated by the testimony of his witnesses, including Miss Duane, a nurse at the hospital to which he was taken, and officer Fred Stucker.

However, according to the evidence of defendants' witnesses, the plaintiff was. driving both recklessly and when in a drunken stupor when he attempted to cross the tracks in front of the approaching freight train which struck him. They state that the gate was being lowered, but that when it fell, it struck the street and bounded upward, at which instant the appellee rushed under it.

Appellants appear to contend that they were entitled to a peremptory instruction, upon the theory that according to their evaluation of the weight and credibility of the testimony of their witnesses and that given by plaintiff and his witnesses, the latter was altogether nullified and so contradicted as to practically amount to there being no evidence supporting plaintiff's claim.

However, defendants do further in their brief concede that even

> "disregarding any conflict between the testimony introduced by the plaintiff and the defendants and testing the case for the purposes of a peremptory instruction only by the evidence introduced by the plaintiff, we maintain that the testimony of the plaintiff himself, by which he is certainly bound, clearly demonstrates that the accident resulted from his own negligence but for which it would not and could not have occurred,"

and continuing argue, in support of their contention that they were entitled to a peremptory instruction, that:

> "It has been held in the cases above cited that where a person about to cross a railroad track sees a train approaching it is his duty to keep out of the way of it. The plaintiff did see the approaching train. He had ample chance to keep out of its way and did not do so. He should not have proceeded under these conditions whether the gates were up or down. He ran right into the path of a

train which was a short distance away and which was coming toward the street on which he was traveling. He ran right in front of it. If this is not contributory negligence as a matter of law, it is hard to say what is and *we depend for this proposition upon the plaintiff's own testimony, by which he is certainly bound."* (Italics ours.)

This argument is not altogether persuasive, in that these things are just what the plaintiff testifies he did not do. He testifies that he did not recklessly cross the tracks when seeing an approaching train; that he did attempt to exercise ordinary care in looking to see if there was an approaching train; that he slowed down the pace of his traveling and continued to look in order to determine if a train was approaching, because of his having seen a flare of light, and if the crossing gate was being lowered to warn of the approach of a train.

It is not here appellee's contention, attributed to him by appellants, that he could drive pell-mell, and without regard for his safety, into the path of a railroad train crossing a street and then be allowed to recover for his injuries, merely because the safety gate was up or open and the warning bell not ringing, but he does argue that the crossing gate was up at this street intersection, which was an invitation to the public to cross and a notice to travelers that they might cross without danger of being struck by an approaching train, but with the continuing duty remaining on the part of the traveler to exercise ordinary care for his safety, and which ordinary care was such as a prudent person would exercise under the same or similar circumstances, and that failure to exercise such degree of care would constitute contributory negligence, barring his recovery.

As to whether or not such degree of care was exercised by the appellee in the premises was a question for the jury, and this question was determined in favor of the plaintiff under what we deem were proper instructions given by the court.

In numerous and repeated cases, we have declared that when the crossing gates are open or up and the warning signal silent, such fact is an invitation to the public to cross the tracks, and amounts to an assur-

ance given the public that no train is then dangerously approaching the crossing, and that travelers can cross in safety. Louisville & N. R. R. Co. v. Roth, 130 Ky. 759, 114 S. W. 264, 265; Schulte v. L. & N. R. R. Co., 128 Ky. 627, 108 S. W. 941, 33 Ky. Law Rep. 31; Kentucky & I. Bridge & R. Co. v. Singheiser (Ky.) 115 S. W. 192; Louisville & N. R. R. Co. v. Wilson, 124 Ky. 836, 100 S. W. 302, 30 Ky. Law Rep. 1048; Sights v. Louisville & N. R. R. Co., 117 Ky. 436, 78 S. W. 172, 25 Ky. Law Rep. 1548; Dick v. L. & N. R. R. Co., 64 S. W. 725, 23 Ky. Law. Rep. 1068.

To such effect is the rule stated in L. & N. R. R. Co. v. Roth, supra, cited by appellee, as follows:

"The failure to protect this crossing was not due to accident, or other cause that could not well be anticipated or guarded against. It was the result of reckless inattention to duty on the part of the employee who was stationed there to warn travelers of the approach of trains by closing the gates. * * * The fact that the gates were open was itself an invitation that the passage was safe. The open gates, in effect, said to the traveler: 'You may safely cross the track, as no train is approaching that will injure you.'"

The learned trial court here instructed upon this rule of law by its given instruction No. 2 as follows: You are instructed that the plaintiff, Burkholder, had no right to rely exclusively upon the operatives of the gates at said crossing, but that it was the duty of the plaintiff on said occasion to operate his automobile at a rate of speed that was reasonable and proper, having regard for the traffic and use of the street at the time and place, to have said automobile under reasonable control, to keep such a lookout for approaching trains as a person of ordinary prudence would do under similar circumstances, and to exercise ordinary care for his own safety; and if you believe from the evidence that plaintiff failed in one or more of said duties, and his failure, if any, caused or so contributed to cause or bring about the collision between the train and his automobile that but for such failure on his part said collision would not have occurred and he would not have been injured, the law is for the defendants, Southern Railway Company and Kentucky & Indiana Terminal

Railroad Company, and you should so find, although you may believe from the evidence that the defendants failed in their duty as submitted to you in the first instruction.

Under this instruction the jury found upon the plaintiff's evidence that he must be taken to have complied with the duties imposed by this instruction. We are of the opinion that the instruction as given was proper and fairly submitted the issue, as to contributory negligence, presented by the evidence. Louisville Gas & Electric Co. v. Beaucond, 188 Ky. 725, 224 S. W. 179; C. L. & L. Motor Express v. Lyons et al., 245 Ky. 611, 53 S. W. (2d) 978. Such being our conclusion as to this, it further follows that the peremptory instruction was here properly refused. Wherefore, we conclude the judgment should be, and it is, affirmed.