## Whitney v. Louisville & N. R. Co., Inc.

March 5, 1940.

N. Porter Sims, Judge.

Rodes K. Myers and H. W. Vincent for appellant.

Rodes & Willock, John B. Rodes, J. Miller White and H. T. Lively for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

A semi-trailer truck belonging to appellant, A. M. Whitney, doing business as the Whitney Transfer Company, was destroyed when it collided with the engine of one of the appellee's freight trains at the crossing at Brandenburg station about 8 a. m. November 14, 1936. The truck was going in the direction of Owensboro on Highway 60. The train was coming from the west, the direction of Owensboro. The Railway Company had installed an electric warning signal at the crossing. Whitney sued for damages done to the truck. A directed verdict was given in favor of the appellee at the conclusion of Whitney's evidence. From the judgment on that verdict this appeal is being prosecuted.

The following grounds are relied upon for reversal: (1) it was the duty of the appellee to maintain the electric signal and wigwag in the proper manner, and the appellant's agent had a right to rely upon the sufficiency of the same; (2) the appellant should have been permitted to show that the crossing was a dangerous one and that it was the duty of the appellee to operate its

train at a rate of speed commensurate with the hazardous nature of the crossing; (3) the trial court excluded competent evidence; and (4) the evidence admitted was sufficient to take the case to the jury.

From our examination of the record we are of the opinion that the trial court correctly stated that the case narrows down to the question of whether or not the Railway Company was negligent in failing to keep the electric signal system in proper repair.

The Brandenburg station is located in a rural community approximately three miles from the town of Brandenburg. There is a moderate grade for approximately 300 feet from the direction of Louisville to the double track crossing. There are four or five buildings on the left-hand, or western, side of the road along this grade. The nearest building, a small garage, is approximately 60 feet from the nearest rail of the first track, which is a siding track. The distance is approximately 70 feet from the garage to the first rail of the track on which the train was approaching. Three boarding cars were on the siding track at a distance of approximately 150 feet to the west of the center of the crossing. Some repair work was being done at the crossing at the time of the collision and there were piles of materials near it, but it does not appear from the photographs introduced in evidence that they were high enough to obstruct the view of one approaching the crossing from either direction. While there is some evidence to the contrary, we think that the record shows clearly that the driver of the truck had a view of the crossing and the track to the west for at least 150 feet when he passed the small garage mentioned above. The whistle on the train was sounded several times before it reached the crossing.

Mrs. Kathleen Richardson testified that she was on the porch of her home, which is the house nearest the top of the rise, when the truck passed. She said that the train was already whistling for the crossing; that the truck was running about 35 miles an hour and the train seemed to be going a little faster; that she looked in the direction of the crossing, which was visible from her home; that the wigwag was not working and that she did not hear the bell ringing; that the electric signal began to work at about the time the engine and the truck

collided; that the bell was ringing and the wigwag was working when she went down to the crossing shortly after the collision; and that it looked like the driver speeded up his truck just before the collision.

The trial court admitted the evidence of two witnesses who said that about two o'clock in the afternoon of the day of the accident the electric signal did not work as a train was approaching from the west until the engine had crossed the crossing, and then the bell rang but the wigwag did not work. He refused to admit evidence, however, to the effect that on Sunday night before the collision on Saturday the light in the wigwag was not burning though the wigwag was working and the bell was ringing when a train passed; and also that within 10 days or two weeks prior to the accident the signal did not work as a train coming from the west passed the crossing.

Regardless of whether the crossing should be classed as a dangerous one, the conditions surrounding it were such that the Railway Company had seen fit to install an electric warning signal. We are not disposed to say that such a signal, when not in operation, constitutes an invitation for a traveler to enter upon a crossing without regard to other warning signals, or the exercise of ordinary care on his own part in looking for trains. Nor do we interpret the case of Louisville & Nashville Railroad Company v. Mahoney, 220 Ky. 30, 294 S. W. 777, as holding that a traveler upon the highway has a right to rely upon the efficiency of an electric warning signal to warn him of the approach of a train to the crossing where the signal is located, under all circumstances and conditions. An examination of the Mahoney case reveals facts and circumstances as to the time of the accident, condition of the weather, and the location of the track and the highway materially different from those in the case now before us. We have heretofore pointed out that having once installed such a warning signal it is the duty of the Railway Company to exercise ordinary care to have the signal in reasonably effective working condition so as to give reasonable warning of the approach of a train to the crossing. Chesapeake & Ohio R. Co. v. Pittman's Adm'x, 283 Ky. 63, 138 S. W. (2d) 962.

We are not prepared to say as a matter of law that

there was no negligence on the part of the Railway Company. It must not be overlooked that the driver's view was obstructed from the time he came over the rise, (some 300 feet from the track) until he was within approximately 60 feet of the crossing. It is obvious also that his view of the track to the west was partially obstructed by the three boarding cars. Argument is made that there is no showing as to how long these cars had been on the siding track (some 150 feet from the crossing), but we do not think this is material. The Railway Company put the cars there and they could have known by the exercise of ordinary care when they were left at that location that they would at least partially obstruct the view of the track to the west of a traveler upon the highway coming from the direction of Louisville.

All of which brings us to the conclusion that the circumstances peculiar to the case before us are such that it must turn on the question of whether or not the electric signal was in such a state of repair as to give reasonable warning of the approach of a train to the crossing.

We have the testimony of Kathleen Richardson that at the time of the collision she did not hear the bell and that the wigwag of the electric signal was not working until the engine and the truck collided, or immediately before that moment. As we have noted, appellant offered other testimony with the view of showing that the electric signal had been in a defective condition long enough to put the Railway Company on notice of such condition. It is insisted by the appellee that the testimony of the two witnesses who said that the signal did not work properly as the train approached the crossing from the west around two o'clock in the afternoon of the day of the collision was incompetent. It is insisted that the appellant failed to show that the track conditions were the same. Mention is made of the fact that the emergency brakes were applied to the train, causing it to stop suddenly, which happening may have disturbed the electric signal system. No track was torn up and trains continued to use it following the accident. We are of the opinion, under the circumstances at hand, that the trial court properly admitted the testimony as to the manner in which the signal operated during the afternoon of the day of the collision. Kelsch's Guardian

v. Chesapeake & Ohio R. Co., 251 Ky. 332, 64 S. W. (2d) 886. We are also of the opinion that the evidence as to the failure of the light in the wigwag to work on the Sunday night preceding the day of the accident was competent, as well as that as to the failure of the signal to work as the train was approaching from the west some 10 days or two weeks prior to the accident. We are not unmindful of the fact that this evidence was excluded by the trial court, and that the appellee earnestly insists that that ruling was correct. The evidence was competent for the purpose of showing that the signal had not been in a proper state of repair for a sufficient length of time to put the Railway Company on notice of its defective condition. Louisville & Nashville Railroad Company v. Mahoney, supra; and Louisville & Nashville Railroad Company v. Howser's Adm'r, 201 Ky. 548, 257 S. W. 1010, 36 A. L. R. 327. See also the case of Southern Railway Co. v. Whetzel, 159 Va. 796, 167 S. E. 427, 433. In that case evidence was admitted to the effect that the electric signal failed to work until the engine was within a few feet of the crossing when the next train approached from the direction in which the train involved in the collision had come, and also evidence tending to show that the electric signal did not function within two weeks before and several days after the accident. Objection to this evidence was interposed on the ground that the inquiry was confined to the condition of the signal at the time of the accident. As to this evidence the court said:

"This evidence was relevant on the charge in the declaration that the defendant was guilty of negligence in maintaining the automatic signals and as to whether they were reasonably efficient in their operation after installation."

Wherefore, the judgment is reversed, with directions for proceedings consistent with this opinion.