## Chesapeake & O. Ry. Co. et al. v. Pittman.

Dec. 4, 1942.

332

Todd & Beard and Hunt, Bush & Lisle for appellants.

Kinsolving & Reasor, Bernard B. Davis, Dummitt & DeWeese for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

The case is before us on second appeal, with cross appeal. We reversed because of error in rejecting certain evidence offered by defendants, and a technical error in one instruction. See 283 Ky. 63, 138 S. W. (2d) 962. On the second trial plaintiff was awarded $4,750. Appellants contend that judgment should be reversed, because:

(1) The court erroneously overruled motion for directed verdict; (2) the verdict was flagrantly against the evidence; (3) deceased was guilty of contributory negligence as a matter of law; (4) the court erred in refusing to give tendered instructions, and in admitting incompetent evidence. Appellee contends that the judgment should be affirmed on appeal, but reversed on cross appeal because the amount of recovery is inadequate.

We first take up the contention that the court (over objection) admitted incompetent evidence. Miss Smitha, whose testmony we found to be "material" upon the first trial, testified that on the morning of the collision she was at the Hughes' home, located about 550 feet south

of the crossing, adjacent to the highway. She was on the porch when the truck passed, going about 35 miles per hour toward the crossing; as it passed she heard the train whistle about the Doyle house. She anticipated that something was going to happen and stepped out on the straightaway highway and looked in the direction of the crossing; the truck was then about "middle way" between the home and the crossing; she saw the collision. (Pittman was just about to cross when the pilot struck his truck; Pittman was killed and his truck burned). She said that the wigwag was not working and that she did not hear the wigwag bell.

On the first trial it was not known that Tom Meeks was at the Hughes' home at the time of the collision. Defendants later took his deposition in which he said that he was in a rear room and his attention was attracted by some remark made by Frances Smitha. He moved into a front room where he could get a partial view of the wigwag from a window; he said: "I could see that wigwag when it would go to the east, and when it come back to this side I couldn't see it," because trees obstructed his view. He said that he heard the warning bell ringing. This witness admits that he had taken several drinks that morning.

Three witnesses were introduced who testified that before the last trial they had gone to the Hughes' home and looked from the same window and could see no part of the wigwag, due to the fact that there were a number of trees in line between the window and the apparatus, one "18 inches through; there are no leaves on the trees now, but the trunks of the trees obstruct the view, but that particular tree * * * was directly between the window and signal," said one witness.

It may be gathered from the testimony that these observations were made at a time when the semaphore was stationary, though one of them used the expression "moving signal." This testimony met with objection, but was admitted. The contention is that as the accident occurred on August 6, 1938, the testimony was incompetent, because it was not shown that the situations were the same at the time of the accident and when the observations were made.

It was shown that in August, 1938, the trees were in leaf; that in February, 1941, there were no leaves, and

some of the trees had been cut in the interim. The general rule is that before such proof is competent it should be shown that the physical condition at a time when the observation is made must be substantially as at the time of the occurrence. We are of the opinion that since the proof shows that the physical situation was the same in all respects, except the betterment noted, the evidence complained of was not prejudicial. Howard v. Com., 246 Ky. 738, 56 S. W. (2d) 362.

A description of the crossing and surrounding is given in our first opinion, but not in detail. The track crosses the highway (26 feet in width) at an angle of 55 degrees. The semaphore post is at the southeast corner of the intersection; the location of the Hughes' house is referred to above; the Downs and Newton houses are respectively in the southwest and southeast corners of the crossing, not more than 75 feet distant. The Doyle house is about 300 feet west, on the south side of the track, and the Riggs home is around 800 feet west from the crossing. The whistle post and battery well (operating danger signal) are about 1,340 feet west of the crossing. A train running east passes through a cut 3 to 9 feet in depth, and begins about 825 feet west of and ends a short distance from the crossing. On the occasion Pittman was proceeding north on the detour, mentioned in former opinion. The train was traveling west, and as may be gathered from the proof, both traveling about 35 miles per hour.

Mr. and Mrs. Downs were at home; neither in position to see the crossing. He heard the whistle blow once, "up about the Doyle house." After the collision he went to the scene. He did not see the wigwag working, but heard a bell ringing. Mrs. Downs heard the whistle blow, "along by Doyles." She says it was blowing and the bell ringing at the time of the collision, and was not sure whether or not the whistle blew continuously after she first heard it.

Thomas Freeman was at the Downs' home, and learned of the collision and ran out; he noticed that the wigwag was not moving; he did not hear the signal bell, nor approaching whistle or bell. Miss Smitha's testimony has been mentioned above. Lea, a caddy, was on the golf course, about 300 feet east of the crossing and heard the whistle blow, as he judged "when the train was between the Riggs' and Doyle houses." Morris, who was

about 200 yards east of the crossing near the track, says he heard the train whistle once about 310 feet west of the crossing.

There was testimony by many persons living near the crossing, and others who frequently traveled the road, to the effect that on numerous occasions, some very recent, when trains were approaching the crossing the signal appliance did not work; that at other times it worked for a long time when no trains were near. There is some proof that it was difficult for one driving north on the highway, because of the physical situation, to see the semaphore or crossing sign until within a short distance of the tracks.

For the defendant, the engineer and fireman said that the station whistle was blown about the whistle post, then for the crossing; that he blew the whistle and sounded the bell continuously from the post to the crossing. The supervisor of signals inspected this one on August 3rd, and after the collision, and said that it was in working order. A fireman and engineer, who had passed the crossing 25 minutes earlier going east, said that when they went over the bell and wigwag were in action.

Marvin Newton, living near the crossing, and Raymond Doyle were coming out of the house and heard the "explosion." Before this they said they had heard the whistle blow several times, but did not think it blew continuously. Byron Springate, walking west up the railroad toward the crossing, saw the train coming and heard it whistle, "just after coming around the curve," before it reached the crossing. He was 150 yards away; he said the wigwag was working and the bell ringing. On cross-examination he said he heard the whistle about the Riggs home.

W. C. Donaldson, working at the golf course, about one-fourth mile from the crossing, saw the train about 350 yards west of the crossing. He heard the whistle blow four times; the first one before he could see the train, the others "in the cut," and heard the engine bell ringing, but not the crossing bell.

We have heretofore given the substance of Meeks' deposition. The section foreman who went to the scene one hour after the accident said the wigwag and bell were in action. Mrs. Newton lived near the crossing; she heard

the whistle but could not give the number of times, or fix the time or place where it began. It was shown that at the crossing was a sign, marked "Railroad Crossing." Section 786, Ky. Stats., 277.190, KRS fixes the statutory duty as to ringing the bell or blowing the whistle at a distance of 50 rods from a crossing where a signboard is required to be kept, Ky. Stats., sec. 773, KRS 277.160, and requires a continuous signal, one or the other until the engine reaches the crossing.

The whistle post was located 50 yards or more from the crossing, according to the testimony of the civil engineer, and there is proof that the whistle was blown at or near the post. However, a majority of the witnesses, who testified on the subject, said the first blowing of the whistle was "about the Doyle house," or between the Doyle and Riggs' houses." Whether the unanimity suggests to the mind "previous conferences" we cannot say. Proof as to the ringing of the engine bell is to all intents and purposes the same as to the blowing of the whistle, save fewer witnesses say they heard the bell ringing at any time.

If we should ignore all evidence relative to failure to give the statutory signals at the required point, or the nonoperation of the semaphore, our duty would be clear; but to give all weight to the testimony of appellants' witnesses we would have to disregard the testimony of those, both for plaintiff and defendant, who fixed the first signals beginning at a point west of the whistle post, and within less than 400 feet of the crossing.

Appellants contend that plaintiff's evidence, much of which they characterize as "negative" was not sufficiently probative or substantial to authorize submission to the jury, or uphold the verdict, since abolition of the scintilla rule. The gauge is to be found in decisions of this court in which such grounds were raised and discussed. Cloversplint Coal Co. v. Blair, 287 Ky. 158, 151 S. W. (2d) 1052, 1052. In this case we said as to that rule:

> "In numerous opinions theretofore rendered by us we repeatedly said that a verdict may not be classified as flagrantly against the evidence merely because it was not supported by the testimony of as many witnesses as those testifying to the contrary; nor could it be so classified when supported by sufficient testimony to carry conviction, although such

testimony was contradicted by what this court might think was a preponderance of the proof * * * but not so much so as to produce flagrancy in the finding.''

Counsel cites us to many cases wherein we have held that the verdict was palpably against the evidence, or that the court should have directed a verdict for defendant. Lambert v. Miller's Adm'r, 277 Ky. 64, 125 S. W. (2d) 1019; Louisville & N. R. Co. v. Welsh, 272 Ky. 120, 113 S. W. (2d) 879, and others of import. We shall not undertake to distinguish, as to facts, those cases from the one at hand; to do so would take too much space and time.

Appellee also cites a number of cases, among them Louisville & N. R. Co. v. Jameson's Adm'x, 214 Ky. 552, 556, 283 S. W. 1026; Louisville & N. R. Co. v. Curtis' Adm'r, 233 Ky. 276, 25 S. W. (2d) 398; Louisville & N. R. Co. v. Ratliff's Adm'r, 260 Ky. 380, 85 S. W. (2d) 1006; Louisville & N. R. Co. v. Spoonamore's Adm'r, 278 Ky. 673, 129 S. W. (2d) 175, in which we surveyed proof contradictory and conflicting, some of less probative quality than presented here, and held that to be sufficient to take the case to the jury. It is rare than any two cases present for review precisely similar state of facts. Each must be decided on the proof adduced, but a casual review of the Ratliff case, supra, will demonstrate a striking similarity of facts and in which we passed on practically every question raised here on the first two points and as to contributory negligence as a matter of law. That case was written before Nugent v. Nugent's Ex'r, 281 Ky. 263, 135 S. W. (2d) 877; it was not submitted on scintilla; we found sufficient proof to sustain the verdict, and it may be noted in the later Spoonamore case, where there was conflicting and what we termed ''negative'' testimony, we held the evidence sufficient to take the case to the jury, citing Louisville & N. R. R. Co. v. Bryant's Adm'r, 215 Ky. 401, 287 S. W. 245; Cincinnati, N. O. & T. P. R. Co. v. Jones' Adm'r, 166 Ky. 817, 179 S. W. 815. This case cites Chesapeake & O. R. Co. v. Brashear's Adm'x, Ky., 124 S. W. 277, in which as to signal proof is similar to the case here. We are of the opinion that there was sufficient substantial evidence to pass the case to the jury, and to uphold the verdict; it follows that the court properly refused a directed verdict favoring defendants, unless under the contention Pittman was shown to be guilty of negligence as a matter of law.

Since we are to discuss the matter of rejected instructions later, we here incorporate the contributory negligence instruction:

"It was the duty of Buford Lee Pittman at the time and upon the occasion mentioned in the evidence, to operate his truck at a reasonable rate of speed and to keep same under reasonable control and to use ordinary care as he approached the railroad crossing and before entering the crossing, to ascertain whether or not a train was approaching, and to use ordinary care to keep out of the way of the train and to prevent injury to himself, and if the jury believe from the evidence he failed to exercise the care required of him, etc., then the law is for the defendant, and the jury will so find even though the jury believe from the evidence that the defendants were negligent as defined in instruction No. 1."

Counsel argue that "the law referred to and the instruction as given do not permit the traveler to do nothing. He must exercise one or more of the precautions charged against him in the instruction. He must use his faculties." It is said that Pittman was driving at 35 miles per hour and did not check his speed; that the whistle was sounded at least 310 feet west of the crossing, and the R. R. crossing board was in place in sufficient view to give him time to stop, and he failed to observe any signals or signs.

Counsel cites a number of cases wherein we have held plaintiff to be guilty of contributory negligence as a matter of law, among them Louisville & N. R. Co. v. Hurst's Adm'r, 220 Ky. 402, 295 S. W. 458; Illinois C. R. Co. v. Bozarth's Adm'r, 212 Ky. 426, 279 S. W. 636, and the frequently cited case of Chesapeake & O. R. Co. v. Conley's Adm'x, 261 Ky. 669, 88 S. W. (2d) 683. On the other hand counsel for appellee cites an equal number of cases wherein, under proven facts, we held that the question of contributory negligence is for the jury, which is the general rule, unless the proof of negligence is such as to require the peremptory. A resume would lead us into a too lengthy recital of the facts in the pro and con opinions.

It is also argued that the evidence, conflicting though it is, as to the failure of the semaphore signal to be in operation, is sufficient to annul any idea of contributory

negligence as a matter of law. This suggestion is based on quotation from other opinions in the case of Southern R. Co. v. Burkholder, 264 Ky. 796, 95 S. W. (2d) 589, 592, as follows:

> "In numerous and repeated cases, we have declared that when the crossing gates are open or up and the warning signal silent, such fact is an invitation to the public to cross the tracks, and amounts to an assurance given the public that no train is then dangerously approaching the crossing, and that travelers can cross in safety."

It may be noted that recently in discussing cases wherein the semaphore was shown not to be in operation, we wrote that it is not in all cases or under all circumstances, that the failure of operation constitutes an invitation for the traveler to enter upon a crossing without regard to other warning signals, or the exercise of ordinary care on his part in looking for trains. We said in Vinson v. Southern R. System, 287 Ky. 625, 154 S. W. (2d) 734, 735:

> "While the appellants were not entitled to construe the failure of the watchman to be at the crossing and the failure of the flashing lights to work as an invitation to cross to the extent that they might completely abandon the exercise of ordinary care for their own safety, as we said in Whitney v. Louisville & N. R. Co., 282 Ky. 392, 138 S. W. (2d) 503, nevertheless such failures were well calculated to diminish the quantum of care considered as ordinary."

This seems to state the law clearly, and is consonant with the excerpt from the Burkholder case, since there we said, following the statement as to the failure of operating signals, "but with the continuing duty remaining on the part of the traveler to exercise ordinary care for his safety, * * * as to whether or not such degree of care was exercised by the appellee in the premises was a question for the jury." This may be said as to Louisville & N. R. Co. v. Roth, 130 Ky. 759, 114 S. W. 264, and others in which the "invitation" language is used, since in all we have noted there was the ordinary care instruction.

Testimony that the whistle was blown or the engine bell was ringing continuously, or otherwise, for the dis-

tance of more than 825 feet from the crossing is not to be discredited, but many witnesses say that the whistle only blew once, and then near the Doyle home. It is only inferred that Pittman heard the sound of whistle or bell, whether sounded once or more. If it blew only once, and at or about the Doyle house (and the jury had the right to so believe) then the train was in a cut, and at a time when the truck was, as best we gather, as much as 550 feet from the crossing.

Pittman was driving a semi-trailer truck, and no doubt the truck made considerable noise; unlike many of the cases wherein we held contributory negligence as a matter of law, because the traveler saw the train, but nevertheless proceeded, the proof here is that one driving a truck north could only see the engine from his position, a distance of 75 to 80 feet, and then only when the engine was within 40 or 50 feet of the crossing. Traveling at the rate of 35 miles per hour, at approximately 40 feet per second, and seeing the train for the first time after it had come from the cut, Pittman would have been on the crossing, as we indicated in the Vinson case, in the twinkling of an eye, and it might well be doubted if the driver could have done anything to avoid the danger.

It may be true that Pittman should have been warned that he was approaching a crossing, by the highway and railroad crossing signs, but if it be that the semaphore was not working, as the jury had the right to believe, he had then to use only ordinary care in approaching and making the crossing, the failure "calculated to diminish the quantum of care considered as ordinary," a matter to be considered by the jury under appropriate instructions.

In the Ratliff case, supra, we had a similar state of facts with the same question presented, and we held the evidence (conflicting, contradictory, negative) sufficient to take the case to the jury and sustain the verdict. We said, as seems to be applicable here:

"It will not be presumed in case of death, one will voluntarily do, or fail to do, an act that places his own life in peril; but that he took ordinary precaution * * * for his own safety. * * * It was not the duty of Ratliff * * * to stop, look, and listen." [260 Ky. 380, 85 S. W. (2d) 1010].

By a long line of our decisions such doctrine has been

abolished. It was Pittman's duty only to use such care as would usually be expected of an ordinary prudent person in driving his car, and to learn of the approach of the train and keep out of its way, and the court advised the jury that it was his duty to "ascertain whether or not a train was approaching," and to use ordinary care to keep out of its way. This may have some bearing on the next question discussed.

While this is one of the many close cases as to proof, which we have to deal with frequently, we are convinced that under the authority of the cases, adverted to above, to which may be added Cincinnati N. O. & T. P. R. Co. v. Fox, 269 Ky. 242, 106 S. W. (2d) 973; Illinois C. R. Co. v. Applegate's Adm'x, 268 Ky. 458, 105 S. W. (2d) 153, that deceased was not guilty of contributory negligence as a matter of law.

Appellants contend that they were entitled to have the jury instructed specially that if plaintiff relied exclusively upon failure of the electric signals to work, without using ordinary care for his own safety, then he was guilty of contributory negligence, and the jury (if they so believed) should so find. Four instructions were offered embodying the idea, in the form (substantially) as given in the Roth case, and patterned after the one given in the Burkholder case, 264 Ky. 796, 95 S. W. (2d) 589, citing the Roth case, supra.

In each of these cases defendants were appellants, and it would appear anomalous if either on appeal objected to the giving of the special instruction asked for in each case. In the Roth case the writer of the opinion set out all instructions given by the court, including No. 8, the special instruction. The matter of instructions was disposed of in a few simple words [130 Ky. 759, 114 S. W. 266]:

> "The instructions of the court on the subject of contributory negligence is also complained of, but we do not think it is subject to the criticism made. On the contrary, it submitted correctly this feature of the case. The instructions which are as follows express our views of this case as it should have been and was given to the jury."

We have gone back to that record and find that there was no objection to that instruction asked by one defendant and given by the court. Turning to the case (and

the record) we find that instruction No. 7 told the jury that if they believed that the Railroad Company was negligent in the operation of its train, ''and they shall also believe that plaintiff himself was negligent in the manner in which he approached the train, and drove upon said railroad tracks, * * * they should find for the Railroad Company''; this was followed by No. 8.

A reading of appellant's brief in that case manifests beyond question that the sole objection was because the court had refused to give the jury ''substantially the same instruction (No. 8) in behalf of the Bridge Company,'' jointly sued by Roth. The verdict and judgment was against defendants, and it is gathered from the opinion that under the evidence we upheld the jury's finding that both defendants were guilty of negligence, and it was ''this feature of the case'' which was correctly submitted by instruction No. 7; the complaint was that the court refused to give one similar to No. 8 for the Bridge Company, after giving it for the Railroad Company (for reasons set out in the opinion), whose duty it was to see that signals were operating. In the Burkholder case the sole contention of appellant was that under all the facts defendant was entitled to a peremptory instruction; such as were given are not discussed by the appellant.

Counsel for appellant here, in discussing the question, say ''the instructions given were the law of the case,'' citing opinions in which we have on a succeeding appeal laid down that rule, but a survey of the former record shows that the instruction asked on the last trial was not offered on the former. The only discussion of instructions given or offered was No. 1, which was cured on the last trial, and the one requesting directed verdict. Counsel nevertheless points to our opinions holding that where the instruction given is a correct one covering contributory negligence, a refusal to give one in another form, or pointing out specific facts as might constitute negligence, is improper. Cincinnati, N. O. & T. P. R. Co. v. Padgett, 163 Ky. 284, 173 S. W. 780; Burton Const. Co. v. Metcalfe, 162 Ky. 366, 172 S. W. 698.

In the case of Sights v. Louisville & N. R. Co., 117 Ky. 436, 442, 78 S. W. 172, 173, the opinion in reversing on the ground that the court erred in granting peremptory, unnecessarily suggested:

''However, we do not mean to hold that an individual approaching a crossing of this character, can rely

exclusively upon the railway company doing its duty as to giving signals. He is bound to be on the lookout himself, and to exercise ordinary care to prevent accidents."

On a second trial, (Louisville & N. R. Co. v. Sights, 121 Ky. 203, 89 S. W. 132) if such instruction was tendered it is not mentioned in the opinion. We note that in the first opinion the court suggested a proper instruction on contributory negligence.

A close search leads us to no case where this court has reversed a judgment because of refusal to give an instruction such as was requested here. Stanley's Instructions, dealing with instruction on contributory negligence in crossing cases, in Notes, p. 650(1) refers to the Roth and Burkholder cases, and to only two others dealing with the question of nonreliance on operation of signals. Louisville Bridge Co. v. Moroney, Ky. 106 S. W. 870, and Cross v. Illinois C. R. Co., 110 S. W. 290, 292, 33 Ky. Law Rep. 432. In the latter case, where the flagman signaled for plaintiff to cross, the court reversing directed the approved form of contributory negligence instruction. This opinion was by Judge Carroll, who wrote the Roth case, and in laying down what we conceived to be the correct rule as applicable to the case at hand, after saying that the failure to give signals serves to make the traveler less cautious (invitation rule), said:

"* * * And, while he may not rely to the exclusion of exercising ordinary care for his own safety on the open gates or the signal of the flagman, it is not proper to instruct the jury that the traveler has no right to rely entirely on the flagman or the open gates as the case may be; thus diminishing the weight and importance that the traveler has the right to attach to the invitation extended to cross by the open gates or the signal of the flagman."

The court in that case condemned an instruction similar in effect to that refused in the instant case, and specifically laid down instructions to be given on a second trial, omitting the reliance theory. In the Moroney case we quoted from the Sight's case, supra, and Louisville & N. R. Co. v. Wilson, 124 Ky. 836, 100 S. W. 302, and discussed the matter of invitation, but said:

"But the plaintiff, so far as he was himself concerned, was only bound to exercise ordinary diligence for

"his own safety, and this being so he, his attitude is the same as were those of the plaintiffs in the cases above cited."

We think the law is correctly exemplified in the cases cited, particularly the Cross and Vinson cases, supra.

On cross appeal it is insisted that the judgment should be reversed because of inadequacy of the jury's award. This is not a case where the court at first blush considers the sum awarded inadequate, nor does the meager proof on the subject justify a reversal on the stated ground. The employer said Pittman had been working for only 15 days; he was a man in his early twenties, and then earning $18 per week. Counsel in brief say it may be presumed he was in good health, and the life tables showed an expectancy of 31 years.

It is not necessary to discuss cases cited (mostly "excessive" cases) in which we have laid down the rules of measurement. We are cited to no case on the question of inadequacy, by which we could well apply the method of comparison in determining the question. On the authority of Cincinnati, N. O. & T. P. R. Co. v. Lovell's Adm'r, 141 Ky. 249, 132 S. W. 569, 47 L. R. A., N. S., 909, we might hold there was a lack of sufficient proof to justify the jury in awarding a greater amount. There is nothing in the record which would indicate to our minds that there existed the unusual situation of bias on the part of the jury in favor of defendants, or prejudice against plaintiff. The case of Stewart's Adm'r v. Louisville & N. R. Co., 136 Ky. 717, 125 S. W. 154, a similar case, states that there is no precise criterion, and the measure is necessarily for the jury's determination in its discretion, not to be set aside unless it appears that the jury was apparently biased or prejudiced.

We are unable to say that the verdict was for an inadequate sum. The judgment is affirmed on appeal and cross appeal. The whole court sitting.