## SOUTHERN RY. CO. v. FELDHAUS.

Court of Appeals of Kentucky.

June 12, 1953.

Rehearing Denied Oct. 30, 1953.

Louis Seelbach, Middleton, Seelbach, Wolford, Willis & Cochran, Louisville, for appellant.

John H. Dougherty, Louisville, for appellee.

STANLEY, Commissioner.

Leslie Feldhaus' automobile was struck by a train of the Southern Railway Company where the track crosses the Bardstown Road at Beuchel in Jefferson County. A judgment for $10,550 recovered on the first trial of his suit for damages against the railway company was reversed because of erroneous instructions. Other questions were reserved. Southern Railway Co. v. Feldhaus, 311 Ky. 352, 224 S.W.2d 174. Upon a return of the case, the plaintiff amended his petition to include negligence in the operation of the automatic crossing warnings, and at the second trial the case was properly submitted. The verdict and judgment were for $5,000.

On this appeal, the railway company argues that the evidence of its negligence was not sufficient to take the case to the jury and that the plaintiff was guilty of contributory negligence as a matter of law.

The highway runs approximately north and south and the railroad crosses diagonally. The crossing was protected by an electric warning bell and signal lights located at the southeast and the northeast corners of the intersection. When there was no train in the block controlling the signals, a green light on each side of the track burned constantly, thereby indicating to travelers on the highway that no train was approaching in either direction. When a train running from the east (as was the one involved) came within about 1,900 feet of the crossing, it automatically tripped a switch which changed the lights facing the highway to red and activated the signal bell or gong.

The plaintiff, who was very familiar with the situation, testified that he had started up the highway from Smyser's Garage, some 500 feet south of the crossing, and was going about 10 or 15 miles an hour, which permitted him to stop within three or four feet; that the signal lights were green; the gong was silent and no locomotive whistle was blown or bell rung. He did not see the train until it struck him. The plaintiff introduced no corroborative testimony at all concerning the crossing lights or the gong.

The defendant introduced positive evidence to the contrary. Among several dis-

interested witnesses so testifying were Charles H. Rucker and his wife, who were in an automobile going in the opposite direction. Seeing the red light and hearing the gong, they stopped, but Feldhaus came ahead and drove directly in front of the train without having looked either to his right or his left. Four disinterested witnesses testified that the crossing gong was ringing. The company's signal maintenance man had tested these crossing alarms two days before the accident and found them in good condition. He happened to be near the scene of the accident at the time and went there promptly. He found the signals to be working perfectly. Another train came along while he was there and automatically activated them.

The evidence concerning the train's crossing signals is almost equally as preponderant. The plaintiff testified unequivocally that the engine whistle was not blown nor its bell rung. Three women living in different houses close to the crossing testified they did not hear any such signals. On the other hand is the almost overwhelming positive evidence that such signals were given.

Under the prevailing rule, if the verdict should be regarded as flagrantly against the evidence, it would have been the duty of the court to peremptorily instruct the jury to find for the defendant. However, we need not pass upon that point in view of our conclusion that such an instruction should have been given on the ground of contributory negligence.

A gasoline filling station obstructed the view down the track until a motorist was within 30 or 40 feet of it. The accident occurred about noon on a clear day in February, 1945. The plaintiff was driving a small truck with the right window of the cab (the direction from which the train came) closed, but the other window was open. He testified he was driving in second gear about 10 or 15 miles an hour (as he had just left a nearby garage) and could have stopped within 3 or 4 feet. He did not hear any train whistle or crossing gong. The following is from the plaintiff's direct examination. "I looked up at the light as I approached and the green light was burning." "I saw the green light and I kept on going." "I looked to see if there was a train there but there was no train coming and there was no light showing to give you the signal to stop." He was asked, "After you had cleared the filling station and could see to your right, you looked to see if there was a train coming?" He answered, "That's right." In response to the next question, he stated, "No, I did not see any train." Again, "I never did know the train was there until it hit me." On his cross-examination there was a repetition that he did not look up the track for a train but relied solely on the green light. Obviously, his statement that he looked to see if there was a train coming and did not see it is incredible. Nashville, C. & St. L. R. Co. v. Stagner, 305 Ky. 717, 205 S.W.2d 493; McCarter v. Louisville & N. R. Co., 314 Ky. 697, 236 S.W.2d 933.

The speed of the train was estimated as 40 or 45 miles an hour.

The great majority of the courts hold that the failure of a signal device to operate and give warning to travelers of the approach of a train does not entirely relieve one of his duty to exercise ordinary care for his own safety; nevertheless, one may rely to some extent upon the apparent safety implied from the silence of the signal, and that such silence is a circumstance to be taken into consideration by the jury on the issue of contributory negligence. Notes, 53 A.L.R. 978; 99 A.L.R. 732. Our cases are in accord. Whitney v. Louisville & N. R. Co., 282 Ky. 392, 138 S.W.2d 503; Vinson v. Southern Ry. System, 287 Ky. 625, 154 S.W.2d 734; Chesapeake & O. Ry. Co. v. Pittman, 292 Ky. 331, 166 S.W.2d 443; Kentucky & Indiana Terminal R. Co. v. Cantrell, 298 Ky. 743, 184 S.W.2d 111. We have other cases involving open crossing gates, which is, of course, an analogous condition. Louisville & N. R. Co. v. Roth, 130 Ky. 759, 114 S.W. 264; Cross v. Illinois Cent. R. Co., 110 S.W. 290, 33 Ky. Law Rep. 432; Cincinnati, N. O. & T. P. Ry. Co. v. Prewitt's Adm'r, 203 Ky. 147,

262 S.W. 1; Illinois Central R. Co. v. Maxwell, 292 Ky. 660, 167 S.W.2d 841.

■ In the present case the duty of the plaintiff to have exercised ordinary care and that he could not rely exclusively upon the signals was embraced in the instruction on contributory negligence. See Louisville & N. R. Co. v. Roth, 130 Ky. 759, 114 S.W. 264; Instructions to Juries, Stanley, Sec. 650(7). The question is whether or not as a matter of law the evidence we have outlined showed the plaintiff failed to exercise such care and prudence for his own safety. We have his testimony in corroboration of that of Mr. and Mrs. Rucker that he drove onto the track without having looked either to his right or to his left. Although under the law he could rely to a great extent upon the assurance of safety afforded by the green light, he could not rely exclusively upon it, as the court instructed. Cross v. Illinois Central R. Co., Ky., 110 S. W. 290, 33 Ky.Law Rep. 432; Chesapeake & O. Ry. Co. v. Pittman, 292 Ky. 331, 166 S.W.2d 443. But the jury disregarded the evidence that the plaintiff did wholly rely upon the signal.

■ In Vinson v. Southern Ry. System, 287 Ky. 625, 154 S.W.2d 734, the court recognized the law that a traveler may not abandon his duty of exercising ordinary care generally for his safety merely because crossing lights are not working but held that a peremptory instruction for the defendant on the ground of contributory negligence was error because the motorists had testified they had looked for a train when within 20 or 25 feet of the track and it was too late to stop and avoid being struck after the train was discovered. In the present case, the plaintiff, Feldhaus, did not look at all. If he had looked after his view became clear 30 or 40 feet from the track, he could have seen the approaching train. Computation upon the basis of the estimates of the speed of the train and automobile respectively proves the train was then about 150 feet away. He could have stopped, as he testified, within 3 or 4 feet and have been 25 or 30 feet from the track when the train reached the crossing. We are of the opinion, therefore, that the court should have directed a verdict for the defendant.

The judgment is reversed.

CAMMACK and MOREMEN, JJ., dissenting.