CINCINNATI, NEW ORLEANS & TEXAS
PACIFIC RAILWAY COMPANY,
etc., et al., Appellants,

v.

Paul FERGUSON, Appellee.

Court of Appeals of Kentucky.

Sept. 25, 1964.

Rehearing Denied Feb. 12, 1965.

Dissenting Opinion March 12, 1965.

J. Craig Bradley, Jr., and V. A. Bradley, Jr., Georgetown, for appellants.

James Collier, Faurest & Collier, Elizabethtown, Thomas K. Shuff, Georgetown, Raymond C. Stephenson, Louisville, for appellee.

CULLEN, Commissioner.

At 9 a. m. on November 8, 1961, a gravel truck being operated by Paul Ferguson was struck by a freight train of the Cincinnati, New Orleans & Texas Pacific Railway Company on a grade crossing in the outskirts of the city of Georgetown. Ferguson sustained severe injuries. In his action for damages against the railroad company and its engineer he recovered judgment for $157,861.40. The defendants, appealing from the judgment, assert as their principal argument that Ferguson was contributorily negligent as a matter of law and therefore the trial court erred in overruling the defendants' motions for a directed verdict and for judgment n. o. v.

The railroad track runs roughly north and south and the highway runs east and west. Ferguson was going west and the train was going south. The track crosses the highway approximately at right angles and to a point about 900 feet north of the crossing the track is in a straight line. At that point the track curves to the northwest and then continues in a straight line for a long distance.

Ferguson testified that at a point 200 feet east of the crossing he looked to the north and he continued to look for three or four seconds. He was traveling at 15 miles per hour. In this period of lookout, during which he traveled from 66 to 88 feet, he saw no train. His view of that portion of the track from the crossing to the curve

was a lateral view and his view of the track beyond the curve and extending to the north was a head-on view, straight up the track. Taking the view of the evidence most favorable to Ferguson, the train at this time was beyond the curve (had it been between the curve and the crossing Ferguson could not have helped but see it), but nevertheless (by computations of speed and distance) it must have been in a position where it could have been seen, had conditions of visibility been satisfactory. However, Ferguson said that the weather was cloudy and dull, and there were trees on both sides of the track beyond the curve creating a shadowy tunnel effect so that the train would be in semi-darkness. He said that had the headlight of the train been lighted he could and would have seen the train, but it was not lighted; that he had traveled the crossing many times in previous weeks and the trains always had run with lighted headlights in the daytime; that since he saw no headlight on the occasion in question he felt assured that no train was approaching.

Ferguson's testimony was that after completing his lookout to the north he drove for some 50 feet directing his attention to the roadway, which was rough and had chuck holes in the surface; he then, being 75 feet from the crossing, began looking to the south, where his view of the track was obstructed by some buildings. When he had reached a point around 25 feet from the crossing and had been able to obtain a clear view of the track to the south which disclosed that no train was coming from that direction, he glanced to the north and saw the train approaching some 450 feet away. He froze momentarily and then jammed on his brakes but was unable to stop the truck until the front wheels had crossed the nearest rail of the track. Within a second or so the train hit the truck. Ferguson said that by the time he reached the point 25 feet from the track, where he made his glance to the north and saw the train, he had reduced his speed to five miles per hour.

■ Recent decisions of this Court have confirmed the rule that a motorist approaching a grade crossing has the duty to make a reasonably adequate lookout for trains, which duty is not lessened or abrogated by failure of the railroad to give the statutory bell and whistle warnings. See Hargadon v. Louisville & Nashville Railroad Co., Ky., 375 S.W.2d 834; Louisville & Nashville Railroad Co. v. Dunn, Ky., 380 S.W.2d 241.

Here, the lookout made by Ferguson for a few seconds, beginning at a point 200 feet from the crossing, must be characterized as a *remote* lookout, because of the slow speed at which Ferguson was traveling. From the standpoint of time he was a substantial distance from the crossing. During the time it took him to travel that distance the train came into full view and remained in full view for a distance of 900 feet. When the train was in that 900 foot stretch there was no obstacle or impediment to view of any kind. The train would loom large, distinct and clear even to a casual glance. No effort, beyond a mere flick of the eyes, would have been required to see it. In fact, it is difficult to understand how anyone could fail to see it other than by deliberately averting his eyes.

Since he was traveling at an extremely slow rate of speed, there was no need for Ferguson to direct his undivided attention to the surface of the road, or to a lookout towards the south, to the exclusion of the slight glance to the north that would have disclosed the oncoming train.

In our opinion, Ferguson was not entitled, on the basis of his quick conclusion that no train was in dangerous proximity to the north because he saw no headlight, thereafter to so divert his eyes from the direction of the crossing as to preclude his seeing what the slightest, most effortless glance would have disclosed. (Of course his look to the north when he was 25 feet from the track was futile because he was not prepared to protect himself from the danger then disclosed.) As held in Louis-

ville & Nashville Railroad Co. v. Dunn, Ky., 380 S.W.2d 241, due care demanded that Ferguson either continue his lookout or at least look again during the period he traveled at slow speed to the crossing from the point of his first lookout.

It is our opinion that Ferguson must be held to have been contributorily negligent as a matter of law because of his failure to comply with the duty of lookout that the law imposed upon him.

The judgment is reversed with directions to enter judgment for the defendants.

MILLIKEN, C. J., and HILL and MOREMEN, JJ., dissenting.

MILLIKEN, Judge.

I dissent because I think this was a case for the jury. Here we have a city railroad crossing with no flasher signal, with the possibility of a train approaching from either direction, with the visibility none too good, with a definite but unsuccessful effort to keep a lookout for trains, with mere seconds involved—which, to my way of thinking, are not suitable background data to support a conclusion that Ferguson was negligent as a matter of law.

MOREMEN, C. J., and HILL, J., join me in this dissent.