**William Sanford SHEWMAKER, Appellant,**

v.

**LOUISVILLE & NASHVILLE RAILROAD COMPANY, Appellee.**

Court of Appeals of Kentucky.

May 27, 1966.

Peter Perlman, Fowler, Rouse, Measle & Bell, Lexington, for appellant.

Denney, Landrum, White & Patterson, Charles Landrum, Jr., Edwin R. Denney, Lexington, J. Smith Hays, Hays & Hays, Winchester, James M. Terry, Eugene W. Herde, Louisville, for appellee.

PALMORE, Judge.

The appellant, Shewmaker, brought this suit against the appellee railroad company for personal injuries and property damage sustained by him when his truck was hit by a train at a crossing in the city of Mt. Vernon. After a jury had returned a $15,757 verdict in his favor the trial court entered a judgment n. o. v. for the railroad company, and he appeals.

Shewmaker was driving his truck and a trailer of cargo southward on U.S. Highway 25. The highway curves to the right and crosses a double set of railroad tracks which for the sake of convenience may be considered as running east and west. The train was approaching from the east, or Shewmaker's left, on the north track. As a motorist approaches the crossing his view of the railroad right-of-way is substantially obstructed by a service station and various signs in front of it, a large billboard situated parallel with the tracks and about 25 feet to the left of the highway, and an

earth embankment along the north side of the tracks. The embankment is not as tall as a train engine, but it is one of the objects which in the aggregate reduce to an abnormal degree the opportunity of a southbound motorist to observe a train coming from the east.

In view of the extra-hazardous nature of the crossing the railroad company maintains automatic flasher lights and signal bells to warn travelers on the highway when a train is approaching. These signals are supposed to be electrically activated when the train reaches a point 1800 feet from the crossing. However, according to the testimony of both Shewmaker and Eula Day, a passenger in another vehicle simultaneously approaching the tracks from the opposite direction, they did not come on, nor did the train crew sound a bell or whistle, until the engine had almost reached the highway intersection. At this time Shewmaker was some 50 feet, or the length of his tractor-trailer, from the north track. He says he was moving at a speed of 20 to 22 m. p. h. and required a distance of 85' to 100' in order to stop. Hence he was not able to stop before reaching the track, and the left front portion of his vehicle was hit by the lead engine of the train.

The accident happened in the daytime. Photographs and charts were introduced in evidence from which it seems indisputable that at certain points along the highway as he drew near the railroad tracks Shewmaker could have seen the train in time to stop, if only he had looked at the right time and at the right place, or if he had ignored the highway in front of his truck and kept an uninterrupted lookout to the left.

Shewmaker had used the crossing on many occasions and was familiar with the physical circumstances. He admitted that instead of looking to his left (until the automatic signals came on) he depended on the mechanical warning system. The ground on which the railroad company was granted a judgment n. o. v. was that he was contributorily negligent as a matter of law. Cf. Southern Ry. Co. v. Feldhaus, Ky., 261 S.W.2d 308 (1953).

■ The railroad company's brief places much reliance on such recent opinions as Cincinnati, N. O. & T. P. Ry. Co. v. Ferguson, Ky., 385 S.W.2d 947 (1965); Louisville & N. R. Co. v. Dunn, Ky., 380 S.W. 2d 241 (1964); and Hargadon v. Louisville & N. R. Co., Ky., 375 S.W.2d 834 (1964). Those cases stand for the proposition that under ordinary circumstances a motorist approaching a grade crossing with an uninterrupted and unobstructed view (a) for a long distance up the track in the direction from which a train is coming, and (b) for an ample distance on the highway before reaching the intersection, cannot rely solely on a warning signal from the train, and if he drives heedlessly onto the track right in front of the train and is hit by it he must be held negligent. But that was not the situation in this case.

■ When the railroad crossing is equipped with gates or signal devices designed to warn the traveler of an approaching train, the silence or inaction of these protective devices is to some extent an assurance "that no train is then dangerously approaching the crossing, and that travelers can cross in safety." Southern Ry. Co. v. Burkholder, 264 Ky. 796, 95 S.W.2d 589, 592 (1936), quoted in Chesapeake & O. Ry. Co. v. Pittman, 292 Ky. 331, 166 S.W.2d 443, 447 (1942). The apparent invitation and assurance are not absolute, but are nevertheless "well calculated to diminish the quantum of care considered as ordinary." Vinson v. Southern Ry. System, 287 Ky. 625, 154 S.W. 2d 734, 735 (1941).

In the *Vinson* case, last cited, it was held that the failure of the occupants of an automobile to look down the track until they were "right on" it did not convict them of contributory negligence, because it was questionable whether they could have seen the train before reaching that point anyway. In Southern Ry. Co. v. Feldhaus, Ky.,

261 S.W.2d 308 (1953), an injured motorist was held contributorily negligent because, though he said he did look up the track but failed to see the oncoming train, the court took the view that his testimony was not credible and that he had not looked at all. The *Vinson* case was distinguished, but not to the satisfaction of all the court, or of the court today.

■ Shewmaker testified, "You can't see until you get right up to the crossing whether the train is coming or not * * *. You have to be right up next to the crossing before you can see it * * *. If you're moving, you can't get a good view until you get right up to the track." This last remark is the answer to the still photographs introduced in evidence. It is conceded in the railroad company's brief that "there were intermittent obstructions to his view." When a motorist is moving along a street or highway in a congested area and there are substantial obstructions to his view up and down an intersecting railroad track which is equipped with automatic signals to warn him of approaching trains, prudence may suggest that he keep his eye on the road and rely on the signals rather than attempt to peer around and between the signboards and buildings to his left and right. We do not say that in every such instance he may rely absolutely on the signals, but we are of the opinion that whether and to what extent ordinary care would demand any further or additional lookout on his part is definitely a question for the jury to decide. To the extent it is in conflict with this viewpoint, Southern Ry. Co. v. Feldhaus, Ky., 261 S.W.2d 308 (1953), is overruled.

The jurors were instructed that if they found for the plaintiff they should compensate him for (1) damage to his truck, (2) medical expenses incurred, (3) time lost from his employment, (4) pain and suffering, (5) permanent impairment (if any) of his earning power, and (6) loss of use of his truck during the time reasonably required to repair it. They first brought in a nine-man verdict awarding $5400 for item 1, $357.20 for item 2, and "No Damages" for each of the remaining items. On joint motion of the parties the tendered verdict was rejected and the jurors were sent back with instructions that if they awarded medical expenses (item 2) it would be necessary that they award something for pain and suffering (item 4). They returned presently and reported their inability to reach a verdict on item 4. Again the court instructed them, at the instance of the parties, that if they allowed anything for medical expenses they would have to allow something for pain and suffering, even if only $1.00. This time, after further deliberation, they returned a nine-man verdict for $15,-757.20 having lined out the words "No Damages" opposite item 4 and substituted the figure "10,000."

Shewmaker was hospitalized for six days and was incapacitated for some time thereafter. He did endure pain and suffering. A verdict granting him any recovery at all must therefore have awarded something in that respect. Cf. Wall v. Van Meter, 311 Ky. 198, 223 S.W.2d 734, 20 A.L.R.2d 272 (1949). And, of course, the same may be true with respect to some of the other items of damage, such as lost time, but that is unnecessary to decide, because the question now before us is whether in reversing we should direct a new trial.

■ Both in a memorandum opinion and in the judgment the learned trial judge stated that if he had not granted a judgment n. o. v. he would have ordered a new trial because the $10,000 award for pain and suffering was excessive and because the change from a finding of "No Damages" to an obviously reluctant verdict of $10,000 showed "that something went wrong in the jury room." Without determining whether the amount was excessive, and in accordance with CR 50.03, we accede to the discretion of the trial court in granting a new trial on all issues.

The judgment is reversed with directions for a new trial.